**No. 22-1656**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AARON SALTER,

Plaintiff-Appellee,

v.

DONALD OLSEN,

Defendant-Appellant,

and

CITY OF DETROIT, MI

Defendant.

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:18-cv-13136
Hon. Stephanie Dawkins David

**DEFENDANT-APPELLANT DONALD OLSEN'S BRIEF ON APPEAL**

**WORD COUNT CERTIFICATE**

**PROOF OF SERVICE/STATEMENT ON E-SERVICE**

PLUNKETT COONEY

By: MARY MASSARON (P43885)
Attorney for Defendant-Appellant
Donald Olsen
38505 Woodward Avenue, Ste 100
Bloomfield Hills, MI 48304
(313) 983-4801
mmassaron@plunkettcooney.com

## Corporate Disclosure Statement

Under Sixth Circuit Rule 26.1, Defendant-Appellant, Donald Olsen makes these disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   *No.*

2. Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

   *No.*

Dated: December 2, 2022

*/s/Mary Massaron*
MARY MASSARON

**TABLE OF CONTENTS**


**Page**

CORPORATE DISCLOSURE STATEMENT ........ I

TABLE OF AUTHORITIES ........ IV

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........ X

JURISDICTIONAL STATEMENT ........ XI

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........ XIV

STATEMENT OF THE CASE ........ 1

A. INTRODUCTION ........ 1

B. SALTER WAS ARRESTED, TRIED, AND CONVICTED FOR FIRST DEGREE MURDER ........ 1

C. SALTER'S CRIMINAL DEFENSE ATTORNEY HAD ALL THE INFORMATION NEEDED TO DEFEND SALTER DURING HIS CRIMINAL TRIAL BUT INEXPLICABLY FAILED TO DO SO ........ 5

D. SALTER'S CONVICTION WAS SET ASIDE BY AN INVALID STIPULATION ENTERED IN VIOLATION OF MICHIGAN COURT RULES ........ 8

E. SALTER SUED OLSEN RAISING VARIOUS STATE AND FEDERAL CLAIMS ........ 8

F. AFTER DISCOVERY, THE DISTRICT COURT GRANTED SUMMARY JUDGMENT IN OLSEN'S FAVOR ON ALL BUT TWO OF SALTER'S CLAIMS ........ 9

SUMMARY OF ARGUMENT ........ 15

STANDARD OF REVIEW ........ 20

ARGUMENT I ........ 21

THE *HECK* DOCTRINE REQUIRES DISMISSAL BECAUSE SALTER'S CONVICTION AND SENTENCE WERE NOT VALIDLY SET ASIDE BY A DECISION FROM A TRIBUNAL WITH AUTHORITY ..... 21

ARGUMENT II ........ 29

THE DISTRICT COURT REVERSIBLY ERRED IN DENYING OLSEN'S MOTION FOR SUMMARY JUDGMENT BECAUSE SALTER (A) FAILED TO SHOW THAT OLSEN VIOLATED HIS *BRADY* RIGHTS BASED ON THE PURPORTED FAILURE TO TURN OVER A LARGER PHOTO OF COLLINS THAT WAS DUPLICATIVE OF ANOTHER COLLINS PHOTO THAT WAS TURNED OVER; (B)

FAILED TO SHOW THAT OLSEN VIOLATED HIS RIGHT TO A FAIR TRIAL BASED ON THE PURPORTEDLY UNDULY SUGGESTIVE SINGLE PHOTO IDENTIFICATION SHOW-UP REJECTED AS A BASIS FOR A CONSTITUTIONAL CLAIM BY MICHIGAN APPELLATE COURTS AND (C) FAILED TO SHOW CLEARLY ESTABLISHED LAW RECOGNIZING EITHER CLAIMED RIGHT EXISTED IN 2003 ........ 29

A. QUALIFIED IMMUNITY ORDINARILY PROTECTS AN OFFICER UNLESS EVERY REASONABLE OFFICER IN HIS SITUATION WOULD HAVE KNOWN THAT THE CONDUCT WAS UNLAWFUL ........ 29

B. CLEARLY ESTABLISHED LAW MUST BE BASED ON THE SUPREME COURT'S OPINIONS ........ 31

C. THIS CIRCUIT'S MORE RELAXED STANDARD SHOULD BE CHANGED BECAUSE OF THE SUPREME COURT'S DISCUSSION ........ 34

D. UNDER ANY DEFINITION OF CLEARLY ESTABLISHED LAW, THE ANALYSIS MUST BE PARTICULARIZED IN TERMS OF THE FACTS ........ 35

E. SALTER FAILED TO MEET HIS BURDEN TO SHOW CLEARLY ESTABLISHED LAW IN THE PARTICULAR CIRCUMSTANCES, THAT IS, HOLDING THAT A POLICE OFFICER'S PURPORTED FAILURE TO DISCLOSE A DUPLICATIVE PHOTO OF A PERSON ALREADY KNOWN TO THE CRIMINAL DEFENDANT VIOLATES *BRADY* ........ 36

1. *In 2003, even a generalized police obligation to turn over exculpatory evidence had not been recognized ........ 37*

2. *Salter failed to show clearly established law that obligated Olsen to turn over a duplicative photo of a possible suspect already known to the criminal defendant ........ 40*

F. IN THE ALTERNATIVE, THE DISTRICT COURT WAS WRONG TO INFER THAT THE DUPLICATIVE PHOTO HAD NOT BEEN TURNED OVER ........ 44

G. NO CLEARLY ESTABLISHED LAW SHOWED THAT OLSEN VIOLATED SALTER'S RIGHT TO A FAIR TRIAL BY USING A PURPORTEDLY UNDULY SUGGESTIVE PHOTO SHOWUP WITH A WITNESS WHO HAD SEEN THE PERSON IN THE PHOTO BEFORE AND HAD IDENTIFIED HIM AS ONE OF THE SHOOTERS ........ 45

1. *No clearly established law showed that this violated Salter's rights in 2003* ..... *46*
2. *In the alternative, Salter is collaterally estopped from arguing this by the findings during the criminal trial and the habeas corpus proceedings* ..... *48*

CONCLUSION ..... 53
RELIEF ..... 55
CERTIFICATE OF COMPLIANCE ..... 56
DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..... 57
CERTIFICATE OF SERVICE ..... 58

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Morris*,
90 Fed. App'x 856 (6th Cir. 2004) ........ 22

*Aguirre v. Los Angeles Cnty. Dist. Atty.'s Off.,* No. CV 11-8660-JFW PJW,
2012 WL 5830077 (C.D. Cal. Oct. 15, 2012) ........ 42

*Anderson v. Creighton*,
483 U.S. 635 (1987) ........ 31, 36

*Arizona v. Youngblood,*
488 U.S. 51 (1988) ........ 39

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) ........ 31, 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 20

*Barton v Martin,*
949 F.3d 938 (6th Cir. 2020) ........ 41

*Beck v. Hamblen County, Tennessee*,
969 F.3d 592 (6th Cir. 2020) ........ 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 20

*Bell v. City of Southfield, Michigan*,
37 F.4th 362 (6th Cir. 2022) ........ xii

*Brady v Maryland*,
373 U.S. 73 (1963) ........ x, xiv, 8, 9, 11, 13, 15, 18, 19,
........ 22, 29, 34, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 53

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ........ 36

*Capron v. Van Noorden,*
2 Cranch 126, 2 L.Ed. 229 (1804) ........ xi

*Carroll v. Carman*,
574 U.S. 13 (2014) ........ 32

*Carter v. Bell*,
218 F.3d 581 (6th Cir. 2000) ........ 42

*City & County of San Francisco, Calif. v. Sheehan*,
575 U.S. 600 (2015) ........ 32, 33

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019) ........ 30, 33, 41

*City of Tahlequah, Oklahoma v. Bond*,
142 S. Ct. 9 (2021) ........ 30, 31

*Cone v. Bell*,
556 U.S. 449 (2009) ........ 37

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021) ........ 40

*Davenport v. Causey*,
521 F.3d 544 (6th Cir. 2008) ........ 20

*Diehl v. Nelson*,
Sixth Circuit No. 98-32408, issued November 12, 1999 ........ xii

*Estate of Smith v. Marasco*,
318 F.3d 497 (3rd Cir. 2003) ........ 32

*Fottler v. United States*,
73 F.3d 1064 (10th Cir. 1996) ........ xii

*France v. Lucas*,
836 F.3d 612 (6th Cir. 2016) ........ 10

*Greene v. State*,
229 A.3d 183 (Md. 2020) ........ 47

*Gregory v City of Louisville*,
444 F.3d 725 (6th Cir. 2006) ........ 46

*Hampton v. Marion*,
98 Fed.Appx. 410 (6th Cir. 2004) ........ 23

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........ 30

*Hatchett v. City of Detroit*,
714 F. Supp. 2d 708 (E.D. Mich. 2010) *aff'd*, 495 Fed. Appx. 567 (6th Cir. 2012) ........ 51, 52, 53

*Hayward v. Cleveland Clinic Found.*,
759 F.3d 601 (6th Cir. 2014) ........ 22

*Hensley v Carey*,
818 F.2d 646 (7th Cir. 1998) ........ 46

*Hilliard v. Williams*,
516 F.2d 1344 (6th Cir. 1975), *cert. granted, judgment vacated*, 424 U.S. 961 (1976), *aff'd on remand*, 540 F.2d 220, 222 (6th Cir. 1976) ........ 38

*Hobbs v. Cty. of Summit*, No. 5:10CV2069,
2012 WL 359698 (N.D. Ohio Feb. 2, 2012) ........ 24

*Hutsel v. Sayre*,
5 F.3d 996 (6th Cir. 1993) ........ 46

*Illinois v. Fisher,*
540 U.S. 544 (2004) ........ 39

*In re Darvocet, Darvon & Propoxyphene Prods. Liability Litigation,*
756 F.3d 917 (6th Cir. 2014) ........ 48

*Jackson v. City of Cleveland*,
925 F.3d 793 (6th Cir. 2019) ........ 37

*Jean v. Collins,*
221 F.3d 656 (4th Cir. 2000) ........ 37

*Jones v. Clark County, Kentucky,*
959 F.3d 748 (6th Cir. 2020) ........ 20

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) ........ 32

*Kyles v. Whitley*,
514 U.S. 419 (1995) ........ 37

*Malley v. Briggs*,
475 U.S. 335 (1986) ........ 30, 31

*Mansfield, C. & L.M.R. Co. v. Swan,*
111 U.S. 379 (1884) ........ xi

*Manson v. Brathwaite*,
423 U.S. 98 (1977) ........ 46

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ........ xii

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir. 2009) .......... 38, 39

*Monat v. State Farm Ins. Co.*,
469 Mich. 679; 677 N.W.2d 843 (2004) .......... 49, 50

*Mullenix v. Luna*,
577 U.S. 7 (2015) .......... 33, 36

*Murphy v. Martin*,
343 F. Supp. 2d 603 (E.D. Mich. 2004) .......... 23

*Neil v. Biggers*,
409 U.S. 188 (1972) .......... 47

*People v. Kachor*,
400 Mich. 78; 252 N.W.2d 807 (1977) .......... 47

*People v. Kowalski*,
489 Mich. 488; 803 N.W.2d 200 (2011) .......... 50

*People v. Kurylczyk*,
443 Mich. 289; 505 N.W.2d 528 (Mich. 1993) .......... 47

*Peterson v. Heymes*,
931 F.3d 546 (6th Cir. 2019) .......... xiii, 52

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) .......... 41

*Preiser v Rodriguez*,
411 U.S. 475 (1973) .......... 21

*Reichle v. Howards*,
566 U.S. 658 (2012) .......... 31, 32

*Richardson v. Jackson Co.*,
432 Mich. 377; 443 N.W.2d 105 (1989) .......... 29

*Rivas-Villegas v. Cortesluna*,
142 S. Ct. 4 (2021) .......... 33, 36

*Robinson v. Jones*,
142 F.3d 905 (6th Cir. 1998) .......... 20, 23

*Saucier v. Katz*,
533 U.S. 194 (2001) .......... 20, 30

*Schreiber v Moe*,
596 F.3d 323 (6th Cir. 2010) .................... 22

*Scott v. Harris*,
550 U.S. 372 (2007) .................... 45, 53

*Sentinel Trust Co. v. Universal Bonding Ins. Co.*,
316 F.3d 213 (3d Cir. 2003) .................... 53

*State v. Ranieri*,
586 A.2d 1094 (R.I. 1991) .................... 43

*Strickler v. Greene*,
527 U.S. 263 (1999) .................... 37, 40, 43

*Thompson v. Clark*,
142 S. Ct. 1332 (2022) .................... 20

*Timberlake v. State*,
246 Ga. 488, 271 S.E.2d 792 (1980) .................... 42

*United States v. Caicedo-Llanos*,
960 F.2d 158 (D.C. Cir. 1992) .................... 42

*United States v. Todd*,
920 F.2d 399 (6th Cir. 1990) .................... 42

*United States v. Wade*,
388 U.S. 218 (1867) .................... 47

*Walker v. City of New York*,
974 F.2d 293 (2d Cir. 1992) .................... 45

*Watermark Senior Living Retirement Communities, Inc. v. Morrison Management Specialists, Inc.*,
905 F.3d 421 (6th Cir. 2018) .................... 48, 49, 52

*White v. Pauly*,
580 U.S. 73, 137 S. Ct. 548 (2017) .................... 36, 40

*Wilson v. Layne*,
526 U.S. 603 (1999) .................... 35

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) .................... 31

**STATUTES**

28 U.S.C. § 1291 .................... xii

28 U.S.C. § 1331 .......... xi
28 U.S.C. § 1343 .......... xi
28 U.S.C. § 1738 .......... 48
28 U.S.C. § 2254 .......... xi, 22
42 U.S.C. § 1983 .......... xi, 1, 21, 33, 46, 51
M.C.L. 775.16 .......... 28

**RULES**

Fed. R. App. P. 3 .......... xii
Fed. R. App. P. 4 .......... xii
Fed. R. Civ. P. 12(h)(3) .......... xii, 21, 23
MCR 1.109(D)(3) .......... 24
MCR 6.110(D)(2) .......... 49
MCR 6.502 .......... xii, 16, 24, 28, 52
MCR 6.502(A) .......... 26
MCR 6.502(B) .......... 26
MCR 6.502(C) .......... 26
MCR 6.502(D) .......... 26
MCR 6.502(G) .......... 26
MCR 6.506(A) .......... 24

**OTHER AUTHORITIES**

Brennan in Harvard Law School Occasional Pamphlet No. 9, 22-23 (1967) .......... x
Robert L. Stern, *Supreme Court Practice* (2002) .......... x

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendant-Appellant Donald Olsen requests oral argument. Justice Brennan once said that "oral argument is the absolutely indispensable ingredient of appellate advocacy. . . . [O]ften my whole notion of what a case is about crystallizes at oral argument." Robert L. Stern, *Supreme Court Practice*, p. 671 (2002) quoting Brennan in Harvard Law School Occasional Pamphlet No. 9, 22-23 (1967). Oral argument gives counsel a "chance to convince the Court concerning points on which the decision may turn." *Id.,* quoting Ginsburg, Address to the Dinner of American Law Institute, 58 (5/19/94). Argument may be particularly useful since the appeal involves complex civil rights matters about clearly established law under *Brady,* a purportedly unduly suggestive photo identification, and other issues relating to the validity of a stipulated order purporting to vacate a criminal conviction and whether that satisfies the *Heck* doctrine's jurisdictional bar to suit.

## JURISDICTIONAL STATEMENT

Aaron Salter sued the City of Detroit and Donald Olsen alleging violations of 42 U.S.C. § 1983 claiming the City of Detroit and Olsen violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (Complaint, R.E. 1, PageID.1-19). The district court accepted jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Salter raised federal questions.

But Salter's claims are barred by the *Heck* doctrine because his criminal convictions were not lawfully set aside as required by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a 42 U.S.C. § 1983 plaintiff must prove that his conviction has been (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such a determination; or (4) questioned by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. This basis for a dismissal was not raised below. But a litigant may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even at first at the highest appellate court. *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings); *Capron v. Van Noorden,* 2 Cranch 126, 127, 2 L.Ed. 229 (1804) (judgment loser successfully raised lack of diversity jurisdiction for the first time before the Supreme Court); Fed. Rule Civ. Proc.

12(h)(3)("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

When a litigant's civil rights claims are barred by the *Heck* doctrine, district courts should dismiss the claims without prejudice for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). The rationale is that a jurisdiction-related dismissal is not an adjudication on the merits and allows the litigant to reassert his claim if his conviction is later invalidated. *Diehl v. Nelson*, Sixth Circuit No. 98-32408, issued November 12, 1999. See also *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996).

Salter's conviction was never overturned. It was impermissibly set aside by stipulation of two attorneys in the Wayne County Prosecutor's office and two attorneys associated with the Federal Defenders Office. These lawyers lacked authority to set aside a valid conviction without adhering to MCR 6.502, which says an effort to set aside a conviction "must" be under the rule.

Salter timely filed a notice of appeal on July 27, 2022. (Notice of Appeal, R.E. 52, PageID.1461). This Court has jurisdiction of the appeal under F.R.A.P. 3 and 4 and 28 U.S.C. § 1291 because the amended judgment is a final decision of the district court under *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) and *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 365-366 (6th Cir. 2022), and

the notice was filed within thirty days of its entry. This Court also has pendant appellate jurisdiction over state tort issues. *Peterson v. Heymes*, 931 F.3d 546, 556-558 (6th Cir. 2019).

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.

Is this case barred by the *Heck* doctrine because Salter's conviction was not validly set aside by a decision from a tribunal with authority to make such a determination but by a stipulation entered in violation of Michigan court rules?

II.

Did the district court reversibly err in denying Olsen's motion for summary judgment because Salter (A) failed to show that Olsen violated his *Brady* rights based on the purported failure to turn over a duplicative photo of a suspect; (B) failed to show that Olsen violated his right to a fair trial based on the purportedly unduly suggestive single photo identification show-up and (C) failed to show clearly established law recognizing either claimed right existed in 2003?

## STATEMENT OF THE CASE

### A. INTRODUCTION

Plaintiff-Appellant Aaron Salter sued a retired police investigator under 42 U.S.C. § 1983 raising multiple claims arising out of his arrest and conviction for murder and assault. The district court reversibly erred when it denied summary judgment as to two federal claims because Defendant-Appellant Donald Olsen is protected with qualified immunity.

### B. SALTER WAS ARRESTED, TRIED, AND CONVICTED FOR FIRST DEGREE MURDER

Salter was arrested and convicted after a jury trial for first degree murder. (Complaint, R.E. 1, PageID.1-19). In the early morning hours of August 6, 2003, James Luster, Kimberly Allen, and Michael Payne were sitting on the front porch of the home located at 13821 Parkgrove in Detroit. (Complaint, R.E.1, PageID.1-19). Willie Thomas was nearby. (Luster Dep, R.E.29-2, PageID.414). Luster heard what sounded like firecrackers and saw two men, one with a pistol and one with a long gun, coming toward them and shooting. (Luster Dep, R.E.29-2, PageID.414). Luster and Payne ran for the backyard to get away. (Luster Dep, R.E. 29-3, PageID.416). Thomas was fatally injured. Once the shooting ended, Allen drove Luster and Payne to St. John's Hospital for treatment; both had been shot. (Luster Dep, R.E. 29-3,

PageID.417). Luster was discharged from the hospital after several hours. (Luster Dep, R.E. 29-4, PageID.419).

Olsen when to the scene to investigate, and then to the hospital to speak with Luster. (Luster Dep, R.E. 29-5, PageID.421). He took a signed statement from Luster early that same morning. (Witness Statement, R.E. 29-6, PageID.423-427). Luster identified one of the shooters as a guy named Rob. *Id*. He said Rob lived on Pelkey Street, and was 5'7", 150-170, light complexioned, had a thin beard and low cut hair, and was wearing dark clothes. *Id.* Luster also reported that about a month before the shooting a guy named "E" shot up 13821 Parkgrove and also shot a woman on Pelkey Street. *Id*. Luster had never seen the other shooter, but he knew Rob from having seen him driving a 1986 Cutlass waving a gun as he drove past the Parkgrove home. *Id*.

After taking Luster's statement, Olsen drove to the 9th Precinct police station and pulled Aaron Salter's photo. (Olsen Dep, R.E. 29-7, PageID.429-432).[1] He does not recall how and why he concluded that Salter was the person, Rob, referred to by Luster. (*Id*. at PageID.430). Olsen went to Luster's home on Cadieux in Detroit, and showed him a single black and white mug

[1] Olsen learned later that Rob Clark was Salter's cousin. *Id*. at PageID.431. Salter's cousin had been shot by "E" Collins, a competing drug dealer, in Salter's presence only three days before the shooting incident that gave rise to Salter's conviction for killing Thomas.

shot of Salter, asking if the person in the photo was Rob. (Witness Statement, Photo Array, R.E. 29-6, PageID.427).[2] Luster identified Salter's mug shot as Rob. (Witness Statement, R.E. 29-6, PageID.426). Luster said this was the person who had shot at him. *Id*. Olsen then showed Luster a photo array with six mug shots, and Luster did not identify any of those in the array as "the persons that were responsible for the shooting." (Preliminary Examination Transcript, R.E. 29-8, PageID.462).

Olsen filled out his report and submitted it with his entire homicide file to the prosecutor's office. (Investigator's Report, R.E. 29-9, PageID.466). Olsen said Luster would testify to "the identity of Def Salter as the person who shot him." *Id*. The prosecutor recommended a warrant issue for Salter's arrest with charges for first degree murder, two counts of assault with intent to murder, and felony firearm. (Complaint, R.E.29-1, PageID.401). A magistrate judge of the 35th district court then issued a warrant for Salter's arrest. *Id*.

Salter underwent a preliminary examination presided over by Judge Joseph N. Baltimore. (Transcript Preliminary Examination, R.E. 29-8,

---

[2] The mug shot, which was also shown to Luster, was not provided to the district court because it could not be found by then. (Salter Dep, R.E. 29-13, PageID.485). Salter insisted that the mug shot was in the file when he saw it from the Conviction Integrity Unit. *Id*. Olsen's lawyer requested it, but Salter's lawyer had given the file back to the Conviction Integrity Unit. *Id*.

PageID.434-464). Luster identified Salter as the shooter. (Preliminary Examination Transcript, R.E. 29-8, PageID.441-442). According to Luster, Salter was using a long gun at the time of the shooting. (Preliminary Examination Transcript, R.E. 29-8, PageID.441-442). Consistently with his witness statement, Luster said he had seen Salter once or twice before the shooting. Salter had come through the neighborhood in a van with a couple of guns that he brandished. (Transcript, R.E. 29-8, PageID.446-447, 452). Luster was sitting in a car when the van slowed down. (*Id*. at PageID.448). Luster said he had seen Salter's face before so he recognized him from the photo that Olsen showed him. (*Id*. at PageID.449). Luster had seen Salter and the other man standing "right under" a streetlight and recognized them from earlier in the day. (*Id*. at PageID.450).

Luster acknowledged that Salter was 6'4" and 250 pounds during the preliminary examination. (*Id*. R.E. 29-8, PageID.453). Salter's lawyer (Lyle Harris) cross examined Luster about his initial description of Rob, the shooter, as 5'7", 150-170 pounds, with a light complexion. (*Id*. at PageID.454-455). When asked about the discrepancy, Luster said that he had told Olsen "about two guys and I described both of them." (*Id*. at PageID.455). Luster testified that "the two people I picked out was him [that is Salter whom he had identified in the courtroom] and the other guy, Rob, or whatever." (*Id*. at

PageID.458). Luster admitted that he had identified Salter as the shooter despite personally observing Salter's physical size. (Luster Dep, R.E. 20-10, PageID.468).

At the end of the preliminary examination, Salter's attorney moved to suppress the photo identification of Salter and dismiss the case. (R.E. 29-8, PageID.463). He argued that Olsen should have done a photo array with Salter's picture in it rather than show him Salter's mug shot alone. *Id*. But since Luster had said he knew Salter, and had seen him in the past, and had described him and identified him in court, the court bound Salter over for trial. (*Id*. at PageID. 464).

### C. SALTER'S CRIMINAL DEFENSE ATTORNEY HAD ALL THE INFORMATION NEEDED TO DEFEND SALTER DURING HIS CRIMINAL TRIAL BUT INEXPLICABLY FAILED TO DO SO

Many exculpatory facts known to Salter and his defense lawyer in the state criminal trial were never brought to the attention of Olsen, the prosecutor, the court, or the jury. Salter acknowledged at deposition that he and his lawyer received a discovery pack from the prosecutor in the criminal case, which contained Mr. Luster's witness statements, police reports, autopsy report, a mugshot of plaintiff, a six picture photo array, and the like. (Dep of Salter, R.E.29-13, PageID.485).

Salter knew the material facts, including that his cousin Rob had been in a shooting altercation with "E," the suspect whose photo Salter now claims was not turned over to him. Right after his conviction, he drafted a letter to his mother and one to the judge who had presided over his criminal trial setting forth the truth about events from August 3, 2003 until about ten hours after the August 6, 2003 shooting for which he was convicted. (Dep of Salter, R.E.29-14, PageID.487-490; Letter, R.E. 29-15, PageID.492-493). Salter told the judge that everything in his letter was the truth (Dep of Salter, pp. 47-48, R.E. 29-14, PageID.488). Salter also was adamant that he had relayed all this information to his criminal defense lawyer, yet his lawyer refused to call any of the alibi witnesses. (Dep of Salter, pp. 54-56, R.E. 29-14, PageID.490).

Salter explained that three days before the shooting incident for which he was convicted, he had called his cousin, Rob Carter, to pick him up. (Letters, p.1, R.E. 29-15, PageID.492). Carter and his girlfriend picked Salter up, and they rode around in Carter's neighborhood while Carter sold drugs. (*Id*. at PageID.493). Eventually, Carter left the neighborhood, gave his car temporarily to Salter and gave his gun to William Colb. (*Id*. at PageID.493-494). They later reconnected with Salter's cousin. (*Id*. at PageID.494-495).

After they did, Rob Carter received a cell phone call from a drug customer who showed up in a cab to buy drugs. (*Id*. at PageID.494). As Rob

went to the cab to make the sale, a competing drug dealer named "E" (Earland Collins) walked up and shot Carter. (*Id*. at PageID.494-495; Dep of Salter, pp. 66-67, R.E. 29-16, PageID.504). Thinking his cousin, Rob, had just been murdered, Salter ran away and took a cab to his brother's home. (Letter, R.E. 29-15, PageID.495; Dep of Salter, p. 69, R.E. 29-16, PageID.504).

Salter told his brother what had occurred, and they called their mother. (Letter, R.E. 29-15, PageID.494-495; Dep of Salter, p. 70, R.E. 29-16, PageID.504-505). She picked Salter up, and drove him to the home of his cousin, Greg Barksdale, which was on the west side of Detroit. (Letter, R.E. 29-15, PageID.494-495; Dep of Salter, p. 70, R.E. 29-16, PageID.504-505). Also, staying with Barksdale was his girlfriend, Lerline Armstrong, and Ms. Armstrong's mother, Linda Whitehead. (Dep of Salter, pp.69-70, R.E. 29-16, PageID.505; Affidavits, R.E. 29-17, PageID.509-511).

According to Salter and all three alibi witnesses, Salter was at Barksdale's home in the early morning hours of August 6, 2003 when the shooting that Salter was charged with occurred. (Dep of Salter, p.79, R.E. 29-16, PageID.507; Affidavits, R.E. 29-17, PageID.509-511).

Although this exculpatory evidence was known to Salter and his attorney, Salter's attorney never called Salter, Salter's brother and mother, or any of the three alibi witnesses: Barksdale, Armstrong, or Whitehead at trial.

Worse yet, neither Salter nor his attorney ever told Olsen, the prosecutor, or the court these facts at any time before the trial.

### D. SALTER'S CONVICTION WAS SET ASIDE BY AN INVALID STIPULATION ENTERED IN VIOLATION OF MICHIGAN COURT RULES

The Wayne County Prosecutor's office announced in a press release that criminal charges against Salter would be dismissed based on purportedly new evidence that the Conviction Integrity Unit and the Federal Defenders Office had uncovered. (Complaint, R.E.1, PageID.10-11). The Wayne County Prosecutor's office suggested that "the case against Mr. Salter was based primarily on mistaken identification by the main witness in the case." (*Id*. at PageID.2). Two attorneys from the prosecutor's office and two attorneys from the Federal Defenders Office signed a stipulation to set aside the conviction, which was entered by the court. Salter was released from prison. (*Id*. at PageID.11).

### E. SALTER SUED OLSEN RAISING VARIOUS STATE AND FEDERAL CLAIMS

Shortly after his release, Salter sued Olsen raising claims under state and federal law arising from his arrest and conviction. (Complaint, R.E. 1, PageID.1-18). Salter complained that Olsen had fabricated evidence, violated his rights under *Brady* by not disclosing all material evidence, and employed an unduly suggestive witness identification procedure. *Id*.

## F. After discovery, the district court granted summary judgment in Olsen's favor on all but two of Salter's claims

Olsen sought summary judgment arguing that there was no genuine issue of material fact as to any of the claims against him. (Motion for Summary Judgment, R.E. 29, PageID.358-362). Olsen argued that Salter's false arrest claim should be dismissed because it was supported by probable cause, a valid warrant had been issued, and his arrest was supported by Luster's eyewitness identification. (*Id*. at PageID.374-377). Olsen pointed out that no evidence showed any effort to falsify information or to manufacture probable cause. *Id*. Olsen argued that the state law and Fourth Amendment malicious prosecution claims were also subject to dismissal on those grounds. (*Id*. at PageID.377-379).

Olsen urged dismissal of Salter's *Brady* claims because Salter and his attorney received every piece of evidence in Olsen's homicide file, and they were aware of who "Rob" and "E" were as depicted in the photo array. (*Id.* at PageID.380). Olsen also urged dismissal of Salter's claim based on a purportedly unduly suggestive lineup because a suggestive pre-indictment identification procedure does not itself intrude on a constitutionally protected right. Salter was also collaterally estopped from making the argument since it had been raised and rejected during the criminal trial. The state court rejected

the argument because Luster had sufficient independent basis for his identification apart from the photo. (*Id*. at PageID.381-387). In the alternative, Olsen argued that he was protected from both federal and state claims by qualified immunity and Michigan's governmental immunity. (*Id*. at PageID.388-391).

The district court granted in part and denied in part Olsen's motion. (Opinion and Order, R.E. 44, PageID.1058-1101). The district court pointed out that lawyers from the Federal Defenders Office had uncovered evidence showing that Salter had an alibi for the time of the shooting for which he had been convicted. (*Id*. at PageID.1058). The district court rejected Salter's fabrication-of-evidence claim because this Court has suggested that a single-photo identification may not be a basis for a such a claim. (*Id*. at PageID.2075 citing *France v. Lucas*, 836 F.3d 612, 630 (6th Cir. 2016)). The district court rejected Salter's false arrest and malicious prosecution claims under both state and federal law. The district court held that the arresting officers had probable cause because Luster provided an eye-witness identification, no evidence showed that Olsen made, influenced, or participated in the decision to prosecute, and Salter was arrested on a facially valid warrant. (*Id*. at PageID.1078-1082).

The district court held that fact questions existed as to Salter's *Brady* claim based on Olsen's purported failure to turn over a closeup photo of Collins. (*Id*. at PageID.1082-1083). Olsen argued that no evidence established that the photo had not been turned over, the photo array included a photo of the same person, and Salter was present three days earlier when the person in the photo shot his cousin and knew about "E" Collins. (*Id*. at PageID. 1083-1084). The district court rejected these arguments holding that the photo was material and that it was reasonably probable that the outcome of the trial would have been different if the larger photo had been turned over. (*Id*. at PageID.1087). The district court held that Salter had the right not to have exculpatory evidence withheld from him (and inaccurately suggested that Olsen had not disagreed). (*Id*. at , n. 5, PageID.1088). The district court also mentioned that Luster knew about "E" and had identified "E" as a shooter. But Salter's *Brady* claim had to do with the duplicative photo of Collins, not a claimed failure to identify "E." Salter knew about "E" since he had been with his cousin, Rob, when "E" shot him three days before the shooting for which Salter was convicted.

The district court also held that Salter's claim that Olsen employed an unduly suggestive identification procedure was jury-submissible. (*Id*. at PageID.1088-1089). The district court rejected Olsen's argument that Salter

was collaterally estopped from raising this claim because of determinations made during the criminal trial. (*Id*. at PageID.1089-1093). According to the district court, Salter met his burden to show that his rights were clearly established. (*Id*. at PageID1098).

Olsen timely sought reconsideration. (Defendant Donald Olsen's Amended Motion for Reconsideration, R.E. 49, PageID.1285-1430). The motion focused on qualified immunity. Olsen reminded the court that Salter had to show that the right was clearly established. (*Id*. at PageID.1299). Olsen contended that neither right was clearly established in 2003. (*Id*. at PageID.1299-1321).

Olsen pointed out that no precedent held that a police officer had to provide a duplicative photo of an individual already known to a criminal defendant. (*Id*. at PageID.1303). Olsen also pointed out that the district court was wrong on the facts. Contrary to the district court's finding, both Patricia Little of the Wayne County Conviction Unit had specifically said that the photo was in the Wayne County Prosecutor's file. (*Id*. at n.1, PageID.1303). Salter himself testified that he "got a discovery packet" from the prosecutor that included the photo array with "E" and a mugshot of Salter. (Dep of Salter, R.E. 29-13, PageID.485).

Olsen argued that the district court's qualified immunity analysis was reversible because the court considered the claimed rights at too high a level of generality in violation of Supreme Court precedent. (*Id*. at PageID.1304-1305). Olsen contended that *Brady* was an obligation of the prosecutor, and not applied to the police until 2009, long after the investigation and trial here. (*Id*. at PageID.1308). And even with a decision from this Court in 2009, Olsen pointed out that the law was not beyond doubt as to duplicative photos. (*Id*. at PageID. 1308-1310).

Olsen disagreed with the district court's conclusion that clearly established law would have told Olsen in 2003 that a single photo identification of a person was unconstitutional. At that time, when a witness revealed that he had prior knowledge of the shooter's identity and had an independent basis to identify the person as the shooter, a photo showup did not invalidate the identification or raise a constitutional claim. (*Id*. at PageID.1310). Olsen disagreed with the use of a Detroit Police Department policy as a basis to clearly establish the law because violation of a policy does not create a constitutional violation. (*Id*. at PageID.1311). And the policy provided exceptions that would have covered this situation.

Olsen addressed the cases that the district court relied on, pointing out that they were decided after 2003 or failed to clearly establish the law here.

(*Id*. at PageID.1311-1317). Olsen pointed out that Salter's criminal defense attorney had argued chosen not to file a motion to suppress so he could argue that the identification was unreliable. (*Id*. at PageID.1317). Olsen emphasized that the information that Salter relied on was known at the original criminal trial, including Luster's inaccurate description of Salter. (*Id*. at PageID.1318-1319). Olsen also pointed out that the Michigan Court of Appeals and Michigan Supreme Court upheld Salter's conviction, rejecting an argument that the single photo showup violated his due process rights. (*Id*. at PageID.1320).

The district court issued a short conclusory order denying Olsen's amended motion for reconsideration. (Order Denying Defendant's Amended Motion for Reconsideration, R.E. 51, PageID.1460). From those orders, Olsen appealed. (Notice of Appeal, R.E. 52, PageID.1461-1463).

## SUMMARY OF ARGUMENT

Years after he was convicted by a jury of murder and assault, Salter argues that Olsen, a retired police investigator, violated his due process right to a fair trial based on two theories: 1) the investigator did not turn over a duplicative photo of a suspect known to Salter; and 2) the investigator used a purportedly unduly suggestive single photo showup with a witness.

Salter's conviction did not stem from Olsen's purported violation of his due process right to a fair trial under *Brady* or because of a purportedly unduly suggestive photo showup. His conviction stemmed from the inexplicable failure of his criminal defense attorney to call alibi witnesses or put on evidence concerning the drug war between Salter's cousin, Rob, and "E" Collins, all of which Salter knew before trial. Salter's conviction was affirmed by the Michigan Court of Appeals and his habeas proceedings failed to obtain relief. Later, the alibi witnesses, which were known to Salter and his criminal defense attorney all along, cast doubt on his conviction prompting a stipulated order to vacate his conviction (in violation of Michigan court rules which require a detailed motion heard before a judge).

Now, Salter seeks to foist the responsibility for his conviction – not on the jury, not on the state appellate courts, not on the prosecutors, not on his criminal defense attorney whose questionable strategy choices caused his

conviction by the jury -- but on a retired police investigator who turned over his entire file to the prosecutor in 2003 and had nothing more to do with the prosecution. Salter may not use hindsight information and legal principles established long after the investigation and criminal jury trial to foist liability onto Olsen. The district court reversibly erred in failing to grant Olsen summary judgment on multiple grounds including qualified immunity.

Olsen is entitled to summary judgment because his conviction was not validly set aside and the *Heck* doctrine requires dismissal for lack of jurisdiction. This suit is one in a string of lawsuits in which a prosecutor has stipulated with defense attorneys to "vacate" a criminal conviction based on purportedly new evidence or arguments that were previously rejected in habeas proceedings. The use of a stipulated order cannot validly set aside the conviction. The order was signed by two attorneys, Valerie Newman and Carole Stanyar, in the Wayne County Prosecutor's office. It was also signed by two attorneys from the Federal Defenders Office, neither of whom filed an appearance in the state criminal case and only one of whom is admitted to the Michigan State Bar. The stipulated order does not mention MCR 6.502, does not state that there has been a finding of actual innocence, does not contain any of the mandatory grounds for obtaining relief from a criminal judgment of

conviction, and does not describe any of the findings used to justify setting aside the conviction.

No authority (case law or court rule) empowers lawyers in a prosecutor's office to join with federal defenders to set aside a conviction for murder by agreement. The process used here in blatant violation of Michigan court rules allows a person, as here, convicted of first degree murder, to be freed from prison with no judicial safeguards. The process involved a circuit court's rubber stamp to a conclusory stipulated order. Thus, the order purportedly vacating the sentence was invalid, and the federal court lacks jurisdiction to entertain Salter's claims, which directly conflict with and contradict the state court judgment of conviction.[3]

The prosecutor argues that rulings in the state court criminal trial and in habeas corpus proceedings lack collateral estoppel effect because the conviction was supposedly vacated. Michigan law is to the contrary. The ruling on the photo showup was previously actually litigated and decided adversely to Salter. Thus, he is collaterally estopped from his claim here.

---

[3] Even accepting that the belated addition of alibi witnesses warrants vacating a criminal conviction, entry of a stipulated order with no judicial safeguards and in violation of Michigan court rules still is insufficient to circumvent *Heck*. *Heck* required an order vacating a conviction by a tribunal authorized to make that determination. And no such determination was made here by any tribunal as required in MCR 6.502.

In the alternative, Salter's *Brady* claim should have been rejected for failure to state a claim because a duplicative photo need not be turned over. Salter has not shown clearly established law that would have told Olsen in 2003 his conduct violated Salter's constitutional rights.

Yet the district court held that Salter's two claims raised fact questions and declined to dismiss them based on qualified immunity. The district court placed the burden of showing no clearly established law on Olsen when it should have been placed on Salter. The district court also erroneously analyzed the law at an abstract highly general level, which contradicts governing Supreme Court precedent. And the district court impermissibly relied on out-of-circuit precedent and decisions issued long after 2003 to support her ruling.

Salter's *Brady* claim is based on the contention that Olsen purportedly failed to turn over a larger photo of another suspect than the one in the photo array, which Salter's attorneys had in their possession. He and his attorneys had a photo of Collins and Salter knew about him.

Salter's second due process claim presumes that a single photo showup of him violated his due process right to a fair trial. But the witness described the person in the photo before the police interview and photo showup. Luster had seen this person in the neighborhood, as part of a group shooting into the

home several days before, and had seen him on other occasions. On the evening of this shooting, Luster saw the person in the streetlight. Luster provided an in-court identification, which Salter's defense attorney used as a matter of trial strategy to undermine the jury's belief in the reliability of the identification, rather than filing a motion to suppress.

No Supreme Court authority from 2003 recognized a *Brady* claim here. Nor precedent from this Circuit, which was part of a robust consensus of cases imposing the claimed obligation onto Olsen in the particular factual circumstances, existed in 2003. Given the lack of clearly established law, Olsen was entitled to the protection of qualified immunity.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment based on qualified immunity de novo. *Jones v. Clark County, Kentucky,* 959 F.3d 748, 765 (6th Cir. 2020) overruled on other grds in *Thompson v. Clark*, 142 S. Ct. 1332 (2022). If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

This Court's review of whether *Heck v. Humphrey*, 512 U.S. 477 (1994) bars a suit because the suit "would necessarily imply the invalidity of his conviction or sentence," is de novo. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008); *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998).

This Court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded factual allegations as true, and examines whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT I

### THE *HECK* DOCTRINE REQUIRES DISMISSAL BECAUSE SALTER'S CONVICTION AND SENTENCE WERE NOT VALIDLY SET ASIDE BY A DECISION FROM A TRIBUNAL WITH AUTHORITY

Federal Rule of Civil Procedure 12(h)(3) provides for dismissal if the court "determines at any time that it lacks subject matter jurisdiction." Reversal is required here because the *Heck* doctrine requires it.

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held that if a state prisoner's success in a § 1983 suit for damages would "necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487, 114 S.Ct. 2364. *Heck* specifically identified that manner in which a conviction must be set aside to entertain a federal-law civil rights suit. Congress "has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Preiser v Rodriguez*, 411 U.S. 475, 490 (1973). The writ of habeas corpus "evolved as a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to a court of competent jurisdiction." *Preiser*, 411 U.S. at 485. *Heck* explained that the

plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-487. See also *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014); *Adams v. Morris*, 90 Fed. App'x 856, 858 (6th Cir. 2004). To determine whether a § 1983 claim would imply the invalidity of a previous conviction, this Court must consider both the claims raised under § 1983 and the specific offenses for which the § 1983 claimant was convicted. *Schreiber v Moe*, 596 F.3d 323, 334 (6th Cir. 2010).

Salter's claims are necessarily based on the conclusion that his conviction was invalid. They presume a duplicative photo purportedly not turned over by Olsen violated *Brady v Maryland*, 373 U.S. 73 (1963) and an unduly suggestive photo showup violated his right to a fair trial by undermining a witness's identification. Both claims rest on the notion that the conviction was wrongful.

But Salter did not prove that his conviction was reversed on direct appeal (it was upheld by the Michigan Court of Appeals and Michigan Supreme Court), expunged by executive order, or questioned by a federal court's issuance of a writ of habeas corpus (the federal court rejected habeas

relief). Salter did not prove that his conviction was "declared invalid by a state tribunal authorized to make" that determination. No state tribunal determined that the conviction was invalid. Salter points to a conclusory stipulated order that was entered in violation of Michigan court rules and with no finding of the grounds for vacating a conviction. (Stipulated Order Vacating Convictions and Sentences, R.E. 29-20, PageID.520-521).

When the claims necessarily implicate the invalidity of a conviction and it has not been vacated by a tribunal with authority to do so, the complaint must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). Claims should be dismissed because the Court lacks subject matter jurisdiction under *Heck*. See *Hampton v. Marion*, 98 Fed.Appx. 410, 412 (6th Cir. 2004) (affirming district court's dismissal for lack of subject matter jurisdiction under *Heck*); *Murphy v. Martin*, 343 F. Supp. 2d 603, 609 (E.D. Mich. 2004) ("[B]ecause the complaint in this respect fails to state a cognizable federal claim [under *Heck*], the better approach is to dismiss it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3)."); *Robinson v. Booth*, No. 2:14-CV-10201, 2014 WL 555196, at *2 (E.D. Mich. Feb. 11, 2014) ("When a prisoner's civil rights claim is barred by the *Heck v. Humphrey* doctrine, the appropriate course for a federal district court is to dismiss the claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(h)(3).”); *Hobbs v. Cty. of Summit*, No. 5:10CV2069, 2012 WL 359698, at *5 (N.D. Ohio Feb. 2, 2012) (dismissing for lack of subject matter jurisdiction).

Michigan court rules establish how a state court may invalidate a criminal conviction. MCR 6.502 defines the mandatory procedure for seeking relief from a judgment of criminal conviction:

> **(A) Nature of Motion.** The request for relief under this subchapter must be in the form of a motion to set aside or modify the judgment. The motion must specify all of the grounds for relief which are available to the defendant and of which the defendant has, or by the exercise of due diligence, should have knowledge.
>
> **(B) Limitations on Motion.** A motion may seek relief from one judgment only. If the defendant desires to challenge the validity of additional judgments, the defendant must do so by separate motions. For the purpose of this rule, multiple convictions resulting from a single trial or plea proceeding shall be treated as a single judgment.
>
> **(C) Form of Motion.** The motion may not be noticed for hearing, and must be typed or legibly handwritten and include a verification by the defendant or defendant's lawyer in accordance with MCR 1.109(D)(3). Except as otherwise ordered by the court, the combined length of the motion and any memorandum of law in support may not exceed 50 pages double-spaced, exclusive of attachments and exhibits. If the court enters an order increasing the page limit for the motion, the same order shall indicate that the page limit for the prosecutor's response provided for in MCR 6.506(A) is increased by the same amount. The motion must be substantially in the form approved by the State Court Administrative Office, and must include:
>
> (1) The name of the defendant;
>
> (2) The name of the court in which the defendant was convicted and the file number of the defendant's case;

(3) The place where the defendant is confined, or, if not confined, the defendant's current address;

(4) The offenses for which the defendant was convicted and sentenced;

(5) The date on which the defendant was sentenced;

(6) Whether the defendant was convicted by a jury, by a judge without jury, or on a plea of guilty, guilty but mentally ill, or nolo contendere;

(7) The sentence imposed (probation, fine, and/or imprisonment), the length of the sentence imposed, and whether the defendant is now serving that sentence;

(8) The name of the judge who presided at trial and imposed sentence;

(9) The court, title, and file number of any proceeding (including appeals and federal court proceedings) instituted by the defendant to obtain relief from conviction or sentence, specifying whether a proceeding is pending or has been completed;

(10) The name of each lawyer who represented the defendant at any time after arrest, and the stage of the case at which each represented the defendant;

(11) The relief requested;

(12) The grounds for the relief requested;

(13) The facts supporting each ground, stated in summary form;

(14) Whether any of the grounds for the relief requested were raised before; if so, at what stage of the case, and, if not, the reasons they were not raised;

(15) Whether the defendant requests the appointment of counsel, and, if so, information necessary for the court to determine whether the defendant is entitled to appointment of counsel at public expense.

> Upon request, the clerk of each court with trial level jurisdiction over felony cases shall make available blank motion forms without charge to any person desiring to file such a motion.
>
> **(D) Return of Insufficient Motion.** If a motion is not submitted on a form approved by the State Court Administrative Office, or does not substantially comply with the requirements of these rules, the court shall either direct that it be returned to the defendant with a statement of the reasons for its return, along with the appropriate form, or adjudicate the motion under the provisions of these rules. When a *pro se* defendant files his or her first motion effectively seeking to set aside or modify the judgment but styles the motion as something other than a motion for relief from judgment, the court shall promptly notify the defendant of its intention to recharacterize the pleading as a motion for relief from judgment; inform the defendant of any effects this might have on subsequent motions for relief, see MCR 6.502(B), (G); and provide the defendant 90 days to withdraw or amend his or her motion before the court recharacterizes the motion. If the court fails to provide this notice and opportunity for withdrawal or amendment, or the defendant establishes that notice was not actually received, the defendant's motion cannot be considered a motion for relief from judgment for purposes of MCR 6.502(B), (G). The clerk of the court shall retain a copy of the motion.

Under the rule, any request for relief from a judgment of conviction "must be in the form of a motion to set aside or modify the judgment." MCR 6.502(A). The word "must" means "an imperative need or duty: requirement." Merriam-Webster Dictionary, merriam-webster.com. The drafters underscored this imperative by specifying information that "must be substantially in the form approved" and requiring a court clerk to reject a motion if it does not comply with these requirements. MCR 6.502(C) and (D).

The requirements ensure that a criminal is not freed from prison unless a court has examined the basis and made appropriate findings to warrant his release. The process used here deviated from these requirements – leaving no real judicial supervision. No motion and brief were filed and none of the requisite information was provided. The stipulated order cites no law, recite no facts supporting grounds for the relief sought, does not explain whether any ground for the requested relief had been raised before, and if so, at what stage of the proceedings, and if not, the reasons why it was not raised.

The stipulated order does none of these required things. So it is invalid - insufficient under *Heck* to show that Salter's criminal conviction was declared invalid by a tribunal with authority to make such a determination.

Criminal procedures governing arrest require probable cause to be affirmed by a prosecutor and a magistrate or judge before prosecution begins. As the prosecution proceeds, hearings are held with witnesses giving their testimony under oath before a judge or magistrate. Court reporters record the proceedings.

Yet, here, when vacating a criminal conviction for murder entered after a jury trial, a member of the Wayne County Prosecutor's Conviction Integrity Unit submitted a stipulated order to the circuit court with no law, no facts, and no identification of newly discovered evidence. Allowing a prosecutor to

stipulate to vacate a criminal conviction without even a hearing on the record before a judge with a court reporter and evidence from sworn witnesses gives a prosecutor more power than even the governor has to grant clemency to an individual. The Governor's clemency powers are governed by Section 14 of the Michigan Constitution of 1963:

> The governor shall have power to grant reprieves, commutations and pardons after convictions for all offenses, except cases of impeachment, upon conditions and limitations as he may direct, subject to procedures and regulations prescribed by law. He shall inform the legislature annually of each reprieve, commutation and pardon granted, stating reasons therefor.

Unlike the procedures and regulations constraining the governor, two lawyers from a prosecutor's conviction integrity unit agreed with two federal defenders to stipulate to the release a duly convicted prisoner.

The record does not show that the lawyers from the Federal Defenders Office were duly appointed under M.C.L. 775.16. Rather, two lawyers from the Federal Defenders Office, one of whom is not listed as a member of the state bar on the Michigan State Bar Directory, signed this stipulation. The record does not show that either lawyer was appointed to represent Salter in the state criminal proceedings. And the stipulated order violated the mandatory procedure for obtaining relief from a criminal conviction under M.C.R. 6.502.

Thus, the stipulation is properly seen as ultra vires and affords no basis for satisfying *Heck*. Michigan courts have defined ultra vires as activities not expressly or impliedly mandated or authorized by law. *Richardson v. Jackson Co.*, 432 Mich. 377, 381; 443 N.W.2d 105 (1989). That definition applies here where no attorney has authority under the law to set a convicted prisoner free by agreement without the judicial oversight that arises from adhering to MCR 6.502. So this case is properly dismissed for lack of subject matter jurisdiction.

## ARGUMENT II

**THE DISTRICT COURT REVERSIBLY ERRED IN DENYING OLSEN'S MOTION FOR SUMMARY JUDGMENT BECAUSE SALTER (A) FAILED TO SHOW THAT OLSEN VIOLATED HIS *BRADY* RIGHTS BASED ON THE PURPORTED FAILURE TO TURN OVER A LARGER PHOTO OF COLLINS THAT WAS DUPLICATIVE OF ANOTHER COLLINS PHOTO THAT WAS TURNED OVER; (B) FAILED TO SHOW THAT OLSEN VIOLATED HIS RIGHT TO A FAIR TRIAL BASED ON THE PURPORTEDLY UNDULY SUGGESTIVE SINGLE PHOTO IDENTIFICATION SHOW-UP REJECTED AS A BASIS FOR A CONSTITUTIONAL CLAIM BY MICHIGAN APPELLATE COURTS AND (C) FAILED TO SHOW CLEARLY ESTABLISHED LAW RECOGNIZING EITHER CLAIMED RIGHT EXISTED IN 2003**

### A. QUALIFIED IMMUNITY ORDINARILY PROTECTS AN OFFICER UNLESS EVERY REASONABLE OFFICER IN HIS SITUATION WOULD HAVE KNOWN THAT THE CONDUCT WAS UNLAWFUL

Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503

(2019). The Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the applicable framework for determining the qualified immunity question. The Court adopted an objective standard for qualified immunity.

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 817–818. Since *Harlow*, the Supreme Court has consistently reaffirmed the qualified immunity doctrine and honed the contours of the defense.

In *Malley v. Briggs*, 475 U.S. 335, 341 (1986), the Court first held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. The Court has repeatedly invoked that standard.[4] The Court has explained that a court must ask whether it would have been clear to a reasonable officer that the alleged conduct "was unlawful in the situation he confronted." *Saucier, supra*, at 202. See also, *Ziglar v.*

---

[4] Since *Malley v. Briggs* was decided in 1986 the Supreme Court has repeated the standard no fewer than 21 times, beginning with *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), and more recently in *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021).

*Abbasi*, 137 S. Ct. 1843, 1867 (2017). In other words, the contours of the right must have been sufficiently clear that every reasonable officer would have understood that what he was doing violated the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Existing precedent must have placed the statutory or constitutional question beyond debate. See *id.*; *Malley v. Brigg*s, 475 U.S. 335, 341 (1986). *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

## B. CLEARLY ESTABLISHED LAW MUST BE BASED ON THE SUPREME COURT'S OPINIONS

The Supreme Court has not definitively stated what constitutes clearly established law beyond its own decisions – if anything. But the Court has repeatedly questioned whether binding circuit precedent constitutes clearly established law for qualified immunity purposes or whether it requires a decision from the Court. Olsen urges this Court to adopt this stricter standard to clearly establish the law.

At least six times in the last ten years the Court has strongly suggested that circuit court precedent does not constitute clearly established law for qualified immunity purposes. First in *Reichle v. Howards,* 566 U.S. 658 (2012), the court stated: "Assuming arguendo that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the

circumstances of this case, the Tenth Circuit's cases do not satisfy the 'clearly established' standard here." *Id.* at 665-666.

Two years later in *Carroll v. Carman*, 574 U.S. 13 (2014), the Court stated: "Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances, [citing *Reichle] Marasco* does not clearly establish that Carroll violated the Carmans' Fourth Amendment rights." *Id.* at 17(explaining that a single case, *Estate of Smith v. Marasco*, 318 F.3d 497 (3rd Cir. 2003) could not clearly establish the law).

A year later in *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015), the Court again stated: "But even if 'a controlling circuit precedent could constitute clearly established federal law in these circumstances,' [citing *Carroll*], it does not do so here." *Id.* at 1776.

In 2018 the Supreme Court again addressed the clearly established law component of the analysis in *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018), and stated: "The Court of Appeals made additional errors in concluding that its own precedent clearly established that *Kisela* used excessive force. To begin with, 'even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.' *City and County*

*of San Francisco v. Sheehan,* 575 U.S. 600, 614 (2015) citing *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

In 2019, the Court again assumed without deciding that a court of appeals decision could constitute clearly established law in *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503-504 (2019. Most recently in *Rivas-Villegas v. Corteslun*a, 142 S. Ct. 4 (2021), the Supreme Court reiterated its skepticism that circuit precedent can constitute clearly established law for purposes of qualified immunity:

> Neither Corteslun*a* nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here. Instead, the Court of Appeals relied solely on its precedent in *LaLonde*. Even assuming that Circuit precedent can clearly establish law for purposes of § 1983, *LaLonde* is materially distinguishable and thus does not govern the facts of this case.

*Id.* at 8. Additionally, in *Mullenix v. Luna*, 577 U.S. 7 (2015), the Court implied that only Supreme Court decisions constitute clearly established law: "The dissent can cite no case from this Court denying qualified immunity because officers entitled to terminate a high-speed chase selected one dangerous alternative over another." *Id.* at 15. I

No Supreme Court authority existed in 2003 that would have told every reasonable officer that the failure to disclose a duplicative photo of a person known to the criminal defendant violated a police officer's obligations under

*Brady*. No decision from the Supreme Court held or even suggested that a duplicative photo had to be turned over as a matter of constitutional rights. Nor has the Court ever so held. Thus, even if the district court is correct that Olsen failed to turn over the duplicative Collins photo, a point that is wrong on the facts, no constitutional claim against Olsen exists because no clearly established law would have told him that duplicative photos had to be disclosed.

Likewise, no Supreme Court precedent would have told a reasonable officer that a single photo showup would violate a criminal defendant's due process right to a fair trial when the witness already knew the suspect and had seen him around the neighborhood several times and then identified the suspect in person in open court after testifying about him.

Thus, the district court reversibly erred in denying qualified immunity as to both claims.

### C. THIS CIRCUIT'S MORE RELAXED STANDARD SHOULD BE CHANGED BECAUSE OF THE SUPREME COURT'S DISCUSSION

This Court has adhered to a somewhat more relaxed standard allowing consideration of its own precedent or a robust consensus of decisions to constitute clearly established law. This Court has rejected use of out-of-circuit decisions to clearly establish the law except in extraordinary situations. *Beck*

*v. Hamblen County, Tennessee*, 969 F.3d 592, 603 (6th Cir. 2020).

At a minimum, then, to defeat qualified immunity there must have been in 2003 a Supreme Court decision, a Sixth Circuit decision, or "a robust 'consensus of cases of persuasive authority'" (*al-Kidd, supra*, 563 U.S. at 742, quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), holding that failure to disclose a duplicative photo was a *Brady* violation. No Sixth Circuit precedent nor robust consensus of cases existed in 2003 to provide fair warning to Olsen that nondisclosure of a duplicative photo of an individual already known to Salter might have violated his *Brady* rights. Likewise, no precedent from this Court nor any robust consensus of cases would have told Olsen that the single photo showup violated Salter's due process right to a fair trial when the witness knew him, had seen him several times in the neighborhood, and identified him in open court.

## D. UNDER ANY DEFINITION OF CLEARLY ESTABLISHED LAW, THE ANALYSIS MUST BE PARTICULARIZED IN TERMS OF THE FACTS

Whether the law is clearly established also must heed the Supreme Court's nearly incessant admonitions to the lower courts to refrain from defining clearly established law at a high level of generality.

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades

> ago, the clearly established law must be 'particularized' to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' *Id.* at 639, 107 S.Ct. 3034.

*White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas, supra*, 142 S. Ct. at 8, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

### E. SALTER FAILED TO MEET HIS BURDEN TO SHOW CLEARLY ESTABLISHED LAW IN THE PARTICULAR CIRCUMSTANCES, THAT IS, HOLDING THAT A POLICE OFFICER'S PURPORTED FAILURE TO DISCLOSE A DUPLICATIVE PHOTO OF A PERSON ALREADY KNOWN TO THE CRIMINAL DEFENDANT VIOLATES *BRADY*

The question is not whether it was clearly established in 2003 that a duty to disclose under *Brady* existed; the question is whether the law was sufficiently clear in 2003 "that every reasonable official would have understood that what [Olsen] is doing violates that right." *Rivas-Villegas, supra*, 142 S. Ct. at 7, quoting *Mullenix v. Luna*, 577 U.S. at 11. The law was not sufficiently clear in 2003 that failing to turn over a duplicative photo of a possible suspect known to Salter violated the disclosure requirements of *Brady*, and that is particularly true here because Olsen turned over the photo array, which included a photo of suspect. Olsen should therefore be entitled to qualified immunity on that claim.

### *1. In 2003, even a generalized police obligation to turn over exculpatory evidence had not been recognized*

*Brady v. Maryland*, 373 U.S. 83 (1963) recognized a constitutional requirement addressed to the prosecution's pretrial conduct. *Brady* proscribes withholding evidence "favorable to an accused" and "material to [his] guilt or to punishment." *Cone v. Bell*, 556 U.S. 449, 451 (2009). To establish a *Brady* violation the plaintiff must show: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the state suppressed the evidence, "either willfully or inadvertently"; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999). Accord, *Jackson v. City of Cleveland*, 925 F.3d 793, 814 (6th Cir. 2019).

In 1995, the Supreme Court first held the prosecutor's obligations under *Brady* extended to evidence known to the police: "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). But the obligation was on the prosecutor, not the police.

In 2003, it was still unclear if the disclosure requirement under *Brady* even applied to police officers. In the 2000 case of *Jean v. Collins,* 221 F.3d 656 (4th Cir. 2000), an equally divided en banc panel of Fourth Circuit

summarized the state of *Brady* obligations at the time, explaining the "Supreme Court decisions establishing the *Brady* duty on the part of prosecutors do not address whether a police officer independently violates the Constitution by withholding from the prosecutor evidence acquired during the course of an investigation." The divided en banc Fourth Circuit held that established case law then "left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence." *Id.* One aspect was clear to the Court, "to speak of the duty binding police officers as a *Brady* duty is simply incorrect. The Supreme Court has always defined the *Brady* duty as one that rests with the prosecution." *Id.* at 660.

This Circuit disagreed with the Fourth Circuit's decision in 2009 long *after* the conviction of Salter. *Moldowan v. City of Warren,* 578 F.3d 351, 379 (6th Cir. 2009). Given that history, Salter cannot establish that the claimed obligation under *Brady* was clearly established in 2003. That alone should result in a reversal and dismissal of the *Brady* claim.

To be sure, this Court had cited *Brady* when concluding that an FBI agent hid evidence in 1975. "We hold that the acts and omissions of defendant Clark as outlined above also resulted in depriving Mrs. Hilliard of due process and her constitutional right to a fair trial, under *Brady v. Maryland, supra*." *Hilliard v. Williams*, 516 F.2d 1344, 1349 (6th Cir. 1975), *cert. granted,*

*judgment vacated*, 424 U.S. 961 (1976), *aff'd on remand*, 540 F.2d 220, 222 (6th Cir. 1976) ("The judgment of this court as to Donn Clark will remain in full force and effect."). This Court held that an FBI agent's failure to disclose an FBI report showing no blood on one defendant's jacket coupled with the FBI agent's evasive, if not outright false, testimony at trial deprived the plaintiff of due process and a fair trial. But the decision did not impose an affirmative obligation to disclose material evidence onto a law enforcement investigator. The decision was based on the investigator's hiding key evidence and providing evasive or false testimony at trial when questioned about it.

Equally important, the Supreme Court dictated that withholding evidence would not violate the Due Process Clause if the evidence was only "potentially useful" unless the "criminal defendant can show bad faith on the part of the police." *Illinois v. Fisher,* 540 U.S. 544, 547–48 (2004) citing *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988). See also *Moldowan,* 578 F.3d at 383 (saying that while the Sixth Circuit had not addressed the issue directly, other circuit courts required a defendant-turned-plaintiff to demonstrate that the police acted in bad faith). Salter has not alleged bad faith by Olsen. No evidence suggests Olsen acted in bad faith to intentionally withhold the duplicative photograph knowing it had exculpatory value.

### *2. Salter failed to show clearly established law that obligated Olsen to turn over a duplicative photo of a possible suspect already known to the criminal defendant*

The general abstract proposition that police officials are required to disclose *Brady* evidence to the prosecutor is different from the concrete question in a case. Here, the concrete question is whether it was clearly established in 2003 that a police officer had to turn over a duplicative photo of a suspect. It is necessary to draw that distinction to comply with the Supreme Court's "'longstanding principle that clearly established law should not be defined at a high level of generality.'" *Crawford v. Tilley*, 15 F.4th 752, 765 (6th Cir. 2021), quoting *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017). No clearly established law in 2003 imposed such a duty in the particularized circumstances.

The district court relied on *Strickler v. Greene,* 527 U.S. 263 (1999) for the proposition that the law was clearly established and that Olsen had to turn over a duplicative photograph of an individual Salter already knew about. Yet *Strickler* did not involve a duplicative photo or cumulative evidence of any kind. *Strickler* involved the nondisclosure of notes of witness interviews and letters written by a witness. The notes and interviews "cast serious doubt" on some of the witness's testimony. *Id.* at 273. Even so, the United States

Supreme Court found no *Brady* violation. *Id.* at 296. If anything, *Strickler* supports a reversal here.

The Court's reliance on *Strickler* as the source of a clearly established constitutional violation is a mistake. In fact, no case put the question "beyond debate" about whether Salter's rights were violated by the withholding of a duplicative photograph of an individual already known to him.

The Supreme Court "has repeatedly told courts ... not to define clearly established law at a high level of generality." *City of Escondido, Cal.,* 139 S. Ct. at 503. It is not enough to invoke *Brady* to satisfy the burden of proving that a right is clearly established. Relying on *Brady* is like arguing that the "right to be free from excessive force" sufficiently repudiates qualified immunity in every case alleging excessive force. "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 778–79 (2014).

The plaintiff bears the burden of showing that a right was clearly established at the time of an alleged injury. *Barton v Martin,* 949 F.3d 938, 950 (6th Cir. 2020). To establish a due process violation under *Brady,* 373 U.S. 83, Salter had to show that (1) Olsen suppressed evidence (2) the evidence was

exculpatory (3) the suppressed exculpatory evidence was material such that the result of Salter's criminal trial would have been different. *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000) . It is hard to fathom how a duplicative photo (even if larger) of the same person, known to Salter already, would be considered exculpatory or material. Not only did the district court fail to point to a decision in 2003 holding nondisclosure of a duplicative photo such as this violated a criminal defendant's rights, but multiple courts have held the opposite. See *Aguirre v. Los Angeles Cnty. Dist. Atty.'s Off.,* No. CV 11-8660-JFW PJW, 2012 WL 5830077, at *3 (C.D. Cal. Oct. 15, 2012). There, the district court rejected a *Brady* violation after the prosecution did not produce a duplicative photograph and other information known to the criminal defendant. See also *United States v. Todd,* 920 F.2d 399, 405 (6th Cir. 1990)(withholding a duplicative photograph and other information not a violation if the defendant and his lawyer knew about it and could use the information, or if the information was available to him from another source).

Before 2003, many courts held there was no apparent exculpatory value under similar circumstances. See *United States v. Caicedo-Llanos,* 960 F.2d 158 (D.C. Cir. 1992), (holding no due process violation under *Brady* when police destroyed facsimile photograph of shooting suspect); *Timberlake v. State,* 246 Ga. 488, 271 S.E.2d 792, 797–98 (1980) (holding no *Brady* violation when

prosecution withheld a second photograph of another suspect because Defendant had access to a photograph of suspect and cross-examined witness on the photograph); *State v. Ranieri,* 586 A.2d 1094 (R.I. 1991) (holding no due process violation when the prosecution withheld a photograph of another suspect that the witness identified as the shooter even though the original description of the shooter fit the other suspect and "varied significantly" from the defendant). Any exculpatory value of the duplicative Collins photograph would not have been apparent to Detective Olsen. And since Salter's attorney already had a photo, it cannot be seen as material to his defense.

To overcome Olsen's qualified immunity, Salter had to do more than cite *Brady*. The Supreme Court has repeatedly rebuked the lower courts for this type of mistake. In *Brady,* the Court found a constitutional violation when the prosecution withheld evidence that a co-defendant had confessed to the murder of which Brady was convicted. This case does not involve the confession of a co-defendant. Neither the guidance of *Brady* nor *Strickler* placed the "constitutional question" involved in any of Salter's claims "beyond debate" in 2003.

The Court reversibly erred in finding that Salter satisfied his burden of showing Olsen violated a clearly established constitutional right by allegedly failing to disclose one duplicative photograph of Earland "E" Collins. Salter has

known about Earland "E" Collins since before the murder. Salter received the photo array lineup of "E" Collins before trial, knowing that "E" Collins was a suspect in the earlier Parkgrove shooting. Salter confirmed this information in a letter he wrote at the same time as his conviction, which he affirmed under oath as true. *See* R.E. 29-15 (Salter's letter teemed with references to knowing "E" Collins was the actual shooter of Willie Thomas); R.E. 29-14, PageID.488 (testimony of Salter explaining that the entire letter is "the truth").

No caselaw before 2003 clearly established that an enlarged duplicative photograph of another possible suspect had apparent exculpatory value that needed to be disclosed under *Brady* when the criminal defendant already knew the identity of the other suspect. Because Salter failed to satisfy his burden, Olsen is entitled to qualified immunity.

### F. IN THE ALTERNATIVE, THE DISTRICT COURT WAS WRONG TO INFER THAT THE DUPLICATIVE PHOTO HAD NOT BEEN TURNED OVER

The district court was wrong when it noted that "a jury could reasonably infer that the larger photo of Collins found in Olsen's file was not provided to the trial prosecutor or the defense." (Opinion and Order, R.E. 44, PageID 1085). The district court's determination is utterly discredited by the deposition testimony presented to the district court in Salter's response brief to Olsen's motion for summary judgment. See *Scott v. Harris*, 550 U.S. 372,

379-381 (2007)(when a version of events is utterly discredited by the record so that no reasonable jury could credit it, the facts should be viewed considering that record).

Patricia Little of the Wayne County Conviction Integrity Unit revealed specifically that this photograph, labeled Exhibit 21 of Olsen's Deposition, was in the Wayne County Prosecutor's file. *See* Dep of Little, R.E. 36-24, PageID.994; Photograph, R.E. 36-13, PageID.910 (photograph of "E" labeled as Exhibit 21 of Olsen's Deposition). Salter himself testified that he had the photo array and a mugshot of himself before trial. Salter Dep, R.E. 29-13, PageID.485. Thus, the district court's conclusion that the police failed to turn over the photo amounts to clear error utterly discredited by Salter's sworn testimony. Given the record, the police satisfied their obligations under *Brady* when they turned over exculpatory evidence to the prosecutors as Olsen said he did so. *Walker v. City of New York,* 974 F.2d 293, 299 (2d Cir. 1992).

### G. NO CLEARLY ESTABLISHED LAW SHOWED THAT OLSEN VIOLATED SALTER'S RIGHT TO A FAIR TRIAL BY USING A PURPORTEDLY UNDULY SUGGESTIVE PHOTO SHOWUP WITH A WITNESS WHO HAD SEEN THE PERSON IN THE PHOTO BEFORE AND HAD IDENTIFIED HIM AS ONE OF THE SHOOTERS

The district court erred when it held that Olsen was not entitled to qualified immunity based on Salter's claim that his rights were violated by an unduly suggestive photo showup.

### *1. No clearly established law showed that this violated Salter's rights in 2003*

The district court erroneously held that Olsen was not protected with qualified immunity from Salter's due process claim based on the purportedly unduly suggestive photo showup. This Court has held that a "suggestive pre-indictment identification procedure does not itself intrude upon a constitutionally protected interest." *Hutsel v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993)(quoting *Manson v. Brathwaite*, 423 U.S. 98, 113 n.3 (1977); *Gregory v City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006)(citing *Manson*, 423 U.S. at 113).

To rise to a level of a constitutional violation, the evidence obtained through the line-up must be used at trial. *Hutsell, supra*, at 1005. Also, a plaintiff must allege a violation of the "core right" to a fair trial. It is not enough to allege a violation of the rule against admitting evidence from unnecessarily suggestive lineups, which is simply a prophylactic rule designed to protect the core right to a fair trial. *Hutsell, supra*, at 1005 ("[I]t is only the violation of the core right and not the prophylactic rule that should be actionable under § 1983." (quoting *Hensley v Carey*, 818 F.2d 646, 648-649 (7th Cir. 1998)). When a witness is exposed to impermissibly suggestive pretrial identification procedures, if the prosecutor shows that the

identification has an independent basis it purges the potential taint. *Neil v. Biggers*, 409 U.S. 188 (1972); *United States v. Wade*, 388 U.S. 218 (1867); *People v. Kurylczyk*, 443 Mich. 289, 302; 505 N.W.2d 528 (Mich. 1993); *People v. Kachor*, 400 Mich. 78, 94-95; 252 N.W.2d 807 (1977).

Luster's identification of Salter was a confirmatory identification, which does not require the same constitutional scrutiny. See *Greene v. State*, 229 A.3d 183, 185 (Md. 2020) . As the Michigan Court of Appeals found in evaluating the effect of the evidence on the fairness of Salter's criminal trial, sufficient testimony from Luster showed that he had an independent basis for identifying Salter apart from the photograph Olsen showed him. (Preliminary Exam Tr, R.E. 29-8, PageID.441-442, 446, 452, 463-464, and *People v. Salter*, unpublished per curiam opinion of Michigan Court of Appeals Docket No. 253401, issued April 26, 2005, R.E. 29-18). The Court of Appeals pointed out that an in-court identification by the same witness may still be allowed if an independent basis for the identification can be established as untainted. *People v. Salter*, R.E. 29-18, PageID.513 citing *People v. Kurylcyzk*, 443 Mich. 289, 303; 505 N.W.2d 528 (1993). Luster identified Salter only a few hours after the shooting, and he testified that he had observed him in the streetlight and that he already knew Salter from the neighborhood. *Id.* Thus, the state appellate court determined that the photo showup did not prejudice Salter at

his trial. *Id.* Rather than urge that the photo be excluded during Salter's criminal trial, his defense counsel "decidedly used the suggestive nature of the initial identification procedure to discredit Luster's testimony identifying Salter as the shooter." *Id*. at PageID.514. This was a matter of defense counsel's trial strategy and waived his claim. *Id*.

Now, after defense counsel's strategy did not avoid a guilty verdict, Salter seeks to place the blame for his conviction on Olsen, not his lawyer's trial strategy.

### ***2. In the alternative, Salter is collaterally estopped from arguing this by the findings during the criminal trial and the* habeas corpus *proceedings***

Federal courts give the same preclusive effect to a state-court judgment that the judgment would receive in the rendering state. 28 U.S.C. § 1738; *Watermark Senior Living Retirement Communities, Inc. v. Morrison Management Specialists, Inc.,* 905 F.3d 421, 426 (6th Cir. 2018). The federal court determines whether the Michigan Supreme Court has definitively ruled on the issue and if it "has not yet addressed the issue presented, [the federal court] must predict how the court would rule by looking to all available data, including decisions of [Michigan's] appellate courts." *In re Darvocet, Darvon & Propoxyphene Prods. Liability Litigation,* 756 F.3d 917, 937 (6th Cir. 2014).

Under Michigan law, collateral estoppel requires: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full and fair opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.' Still, mutuality of estoppel is not required if a party asserts issue preclusion defensively. *Watermark, supra,* 905 F.3d at 426 (6th Cir. 2018) citing *Monat v. State Farm Ins. Co.,* 469 Mich. 679; 677 N.W.2d 843 (2004).

The state court has already ruled that Olsen's identification procedures did not cause a deprivation of Salter's constitutional rights. , At the end of the preliminary examination, Salter's attorney moved to suppress the one picture identification of Salter under MCR 6.110(D)(2). (Preliminary Examination Transcript, p. 30, R.E. 29-8, PageID.463). The prosecutor said that Luster had testified that he knew Salter before the shooting, had seen him in the past in the neighborhood, and as such, there was an independent ground for Luster's identification. (Preliminary Examination Transcript, p. 31, R.E. 29-8, PageID.464). The court agreed, found probable cause, and bound Salter over for trial. (*Id*. at PageID.464).

The issue of improper photo identification was actually litigated and was essential to the state court's judgment that there was probable cause because the only evidence to support probable cause was Luster's eye witness

identification. Salter had a full and fair opportunity to litigate the issue. Not only was it raised in the district court and ruled on, but Salter, through his attorney, could have raised it in circuit court as well. The issue was waived, however, as a matter of trial strategy. (*People v. Salter*, unpublished per curiam opinion of Michigan Court of Appeals Docket No. 253401, issued April 26, 2005, R.E. 29-18; PageID.514-516). By not raising the issue again to the trial court, Salter waived the issue for appeal. *People v. Kowalski,* 489 Mich. 488, 503; 803 N.W.2d 200 (2011) (Transcript, R.E. 29-19, PageID.517-518). Salter's criminal defense attorney explained that he believed arguing to suppress Luster's identification in the trial court was futile; he sought to impeach Luster for the suggestive show-up rather than file a motion. (Transcript, R.E. 29-19, PageID.517-518). So the first two elements for issue preclusion are met.

Finally, mutuality of estoppel is not required because Olsen is asserting collateral estoppel defensively. *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 680-681; 677 N.W.2d 843 (2004). Thus, Salter is collaterally estopped from asserting a violation of his right to a fair trial based on purportedly improper photo identification procedures.

Even when a criminal conviction has been overturned, Michigan courts still use collateral estoppel to bar a challenge issues  resolved against the

criminal defendant in prior proceedings. *Hatchett v. City of Detroit,* 714 F. Supp. 2d 708 (E.D. Mich. 2010) *aff'd,* 495 Fed. Appx. 567 (6th Cir. 2012). Hatchett originally confessed to a series of serious crimes after several hours of questioning by police. *Id.* at 710. His defense attorney moved to suppress the confession, and a hearing was held to determine whether it was voluntary. *Id.* at 714. After his conviction, the Innocence Project at Thomas Cooley Law School had biological evidence from the crime reexamined, which provided exonerating DNA evidence. *Id.* at 710. Later, Hatchett and the Macomb County Prosecutor stipulated to his release. *Id.* at 710. Hatchett then filed a civil suit alleging violations of 42 U.S. § 1983, claiming that the police violated his due process rights by coercing his confession. *Hatchett, Id.* at 714.

Applying Michigan law on collateral estoppel, the court held that the plaintiff was collaterally estopped from re-litigating the voluntariness of his confession because the issue was conclusively resolved against him by the state court in the pretrial proceedings. *Id.* at 714-19. The state court's determination that the confession was voluntary was "binding in a subsequent civil action even if the criminal charges have been dismissed in the interim." *Id.* at 718. The court granted summary judgment for the defendants and this Court affirmed it in an unpublished opinion. 495 Fed.Appx. 567 (6th Cir. 2012).

Recently, in *Peterson v. Heymes,* 931 F.3d 546 (6th Cir. 2019), this Court affirmed the denial of summary judgment and suggested that a vacated conviction loses all preclusive effect. *Id.* at *4. This Court did not overturn *Hatchett* but distinguished it because the appeal decision was unpublished and it was "not clear that the criminal conviction [in *Hatchett]* had actually been vacated." *Id.* at *4.

The different outcome in *Hatchett* and *Peterson* support Olsen's position here. In *Peterson,* the state court vacated the conviction based on a motion for relief of judgment filed by the criminal defendant under Michigan Court Rule 6.502, which was vigorously opposed by the prosecution. *See* Transcript, R.E. 29-19, PageID.518). In *Hatchett,* the case was dismissed under a "stipulation" by the prosecutor and the criminal defendant, and no Michigan Court Rule was cited.

This Court, interpreting Michigan law, has addressed the difference between a stipulated vacatur of a judgment and a contested vacatur. In the civil case of *Watermark Senior Living Retirement Communities, Inc. v. Morrison Management Specialists, Inc.,* 905 F.3d 421, 426 (6th Cir. 2018), this Court held "the general rule that vacatur deprives a judgment of its preclusive force is not without exceptions. In fact, several courts have recognized that judgments may retain their finality and preclusive effect when they are set aside or

vacated *upon settlement." Watermark¸* 905 F.3d at 427 (emphasis added). This Court embraced this exception in the *Watermark* case, specifying that the Michigan Supreme Court would similarly adopt this rule given the growing number of courts that have supported this exception. *Id.,* citing *Sentinel Trust Co. v. Universal Bonding Ins. Co.,* 316 F.3d 213 (3d Cir. 2003).

Salter was released by stipulation of the prosecutor and himself. (Stipulation, R.E. 29-20, PageID.520. The judge's order for Salter's release cites no Michigan Court Rule or statute and the order is granted "in the interests of justice." *Id.* This case is nearly identical to *Hatchett,* which also had a stipulated agreement to vacate a conviction on equitable grounds. There, this Court applied collateral estoppel despite the stipulated agreement to vacate the conviction. That same analysis applies here and supports this Court's application of collateral estoppel to conclude that the photo showup did not violate Salter's right to a fair trial. So a reversal is required.

## **CONCLUSION**

Olsen is entitled to summary judgment in his favor as to both Salter's remaining claims. First, under *Scott v. Harris*, Salter's claim based on the purported failure to turn over a duplicative photo fails because the record shows the photo was in the prosecutor's file. In the alternative, Olsen is protected with qualified immunity as to this *Brady* claim because in 2003 no

clearly established law would have told him that the failure to turn over a duplicative photo of a known suspect violated *Brady*. Olsen is also entitled to summary judgment in his favor as to the second claim based on the purportedly unduly suggestive photo showup. First, Salter's argument is collaterally estopped by the state court findings during the criminal proceedings. Second, no clearly established law in 2003 would have told Olsen that a single photo showup of a person known to the witness from multiple occasions before the crime and later identified in open court violated the criminal defendant's right to a fair trial.

## RELIEF

Wherefore, Defendant-Appellant Donald Olsen respectfully requests this Court reverse the district court and hold that he is entitled to summary judgment on all remaining counts and grant him such other relief as warranted in law and equity.

Respectfully submitted,

PLUNKETT COONEY

By: */s/Mary Massaron*
MARY MASSARON (P43885)
Attorney for Defendant-Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(313) 983-4801
mmassaron@plunkettcooney.com

Dated: December 2, 2022

## CERTIFICATE OF COMPLIANCE

STATE OF MICHIGAN )<br>) SS.<br>COUNTY OF OAKLAND )

MARY MASSARON, being first duly sworn, certifies and states the following:

1. She is a shareholder with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached brief on appeal;

2. The brief on appeal prepared by her office complies with the type-volume limitation;

3. Plunkett Cooney relies on the word count of their Microsoft Word 2010 word processing system used to prepare the brief, using Cambria size 14 font; and

4. The word processing system counts the number of words in the brief as 12,858.

Dated: December 2, 2022

*/s/Mary Massaron*<br>MARY MASSARON

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| R.E. No. | DESCRIPTION | PageID |
|---|---|---|
| 1 | Complaint | 1-19 |
| 29 | Motion for Summary Judgment on Behalf of Defendant Corrected for Typos and Errant Exhibit Copying | 358-392 |
| 29-1 | Complaint | 393-412 |
| 29-2 | Luster Deposition (excerpts) | 413-414 |
| 29-3 | Luster Deposition (excerpts) | 415-417 |
| 29-4 | Luster Deposition (excerpts) | 418-419 |
| 29-5 | Luster Deposition (excerpts) | 420-421 |
| 29-6 | Witness Statement and Photo Array | 422-427 |
| 29-7 | Olsen Deposition | 428-432 |
| 29-8 | Preliminary Examination Transcript | 433-464 |
| 29-9 | Investigator's Report | 465-466 |
| 29-10 | Luster Deposition (excerpts) | 467-468 |
| 29-13 | Salter Deposition (excerpts) | 484-485 |
| 29-14 | Salter Deposition (excerpts) | 486-490 |
| 29-15 | Letters | 491-502 |
| 29-16 | Salter Deposition (excerpts) | 503-507 |
| 29-17 | Affidavits | 508-511 |
| 29-18 | *People v. Salter*, unpublished per curiam opinion of Michigan Court of Appeals Docket No. 253401, issued April 26, 2005 | 512-516 |
| 29-19 | Transcript, *People v. Kowalski*, 489 Mich. 488, 503; 803 N.W.2d 200 (2011) | 517-518 |
| 29-20 | Stipulated Order Vacating Convictions and Sentences | 519-521 |
| 36-13 | Photograph | 909-910 |
| 36-24 | Little Deposition | 989-1000 |
| 44 | Opinion and Order | 1058-1101 |
| 49 | Defendant Donald Olsen's Amended Motion for Reconsideration | 1285-1430 |
| 51 | Order Denying Defendant's Amended Motion for Reconsideration | 1460 |
| 52 | Notice of Appeal | 1461-1463 |

## CERTIFICATE OF SERVICE

MARY MASSARON, attorney with the law firm of PLUNKETT COONEY, being first duly sworn, deposes and says that on December 2, 2022, she caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the United States Court of Appeals for the Sixth Circuit, and via U.S. Mail to any party and/or counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the U.S. Mail.

By: *[/s/Mary Massaron]*

MARY MASSARON (P43885)
Attorney for Defendant-Appellant
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(313) 983-4801
mmassaron@plunkettcooney.com