# CASE NO. 22-1656

==========================================================

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

AARON SALTER,

*Plaintiff-Appellee,*

-vs-

DONALD OLSEN,

*Defendant-Appellant,*

*and*

CITY OF DETROIT, MI,

*Defendant.*

On Appeal from the United States District Court for
the Eastern District of Michigan Southern Division

_____

## PLAINTIFF-APPELLEE'S RESPONSE TO DEFENDANT-APPELLANT'S
## PETITION FOR REHEARING AND REHEARING EN BANC

_____

MARK GRANZOTTO, P.C.

MARK GRANZOTTO
BETH A. WITTMANN
Attorneys for Plaintiff-Appellee
2684 Eleven Mile Road, Suite 100
Berkley, Michigan 48072
(248) 546-4649

# **TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     I.     THE PANEL MAJORITY CORRECTLY CONCLUDED
          THAT THE DISTRICT COURT PROPERLY DENIED
          SUMMARY JUDGMENT AS TO PLAINTIFF'S
          CLAIM OF A CONSTITUTIONAL VIOLATION FOR
          DEFENDANT'S FAILURE TO DISCLOSE
          EXCULPATORY EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     II.    THE PANEL MAJORITY ALSO CORRECTLY
          CONCLUDED THAT THE DISTRICT COURT
          PROPERLY DENIED SUMMARY JUDGMENT AS TO
          PLAINTIFF'S CLAIM OF A CONSTITUTIONAL
          VIOLATION FOR DEFENDANT'S UNNECESSARILY
          SUGGESTIVE SINGLE-PHOTO IDENTIFICATION
          PROCEDURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C). . . . . . . . . . . . . . . . . . . 20

DESIGNATION OF RECORD ON APPEAL. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# INDEX OF AUTHORITIES

**Page**

## Cases

*Barton v. Warden, S. Ohio Corr. Facility*,
    786 F.3d 450 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Berryman v. Rieger*,
    150 F.3d 561 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brady v. Maryland*,
    373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*City of Warren, Michigan v. Moldowan*,
    561 U.S. 1038 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Clark v Louisville-Jefferson Cnt. Metro. Gov't*,
    130 F.4th 571 (6th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gillispie v. Miami Twp., Ohio*,
    18 F.4th 909 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gregory v. City of Louisville*,
    444 F.3d 725 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jackson v. City of Cleveland*,
    925 F.3d 793 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. City of Cheyenne*,
    99 F.4th 1206 (10th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Johnson v. Jones*,
    515 U.S. 304 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Killian v. United States*,
    368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961) . . . . . . . . . . . . . . . . . . . . . . . 15

*Kyles v. Whitley*,
    514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moldowan v. City of Warren,*
578 F.3d 351 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Perry v. New Hampshire,*
565 U.S. 228 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Salter v. Olsen,*
__ F.4th __ (6th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Simmons v. U.S.,*
390 U.S. 377 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stovall v. Denno,*
388 U.S. 293 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Strickler v. Greene,*
527 U.S. 263 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tarter v. Gregory,*
549 U.S. 1114 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tennison v. City and County of San Francisco,*
570 F.3d 1078 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Johnson,*
457 U.S. 537 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **Rules**

6th Cir. I.O.P. 40(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6th Cir. Rule 29(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

6th Cir. Rule 32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# **STATEMENT OF THE CASE**

Aaron Salter served 15 years in prison for a murder he did not commit. Donald Olsen, the Detroit Police Department (DPD) officer in charge of the homicide investigation, sought a warrant for Mr. Salter's arrest based solely on Jamar Luster's identification of Mr. Salter from a single photograph. (RE.36-4: Olsen Dep., at 65-66, PageID#748; RE.29-9: Investigator's Report, PageID#466).

Based only on what he described as a "hunch," Officer Olsen brought the single photograph of Mr. Salter to Luster's house the morning of the shooting and showed it to him. (RE.36-5: Olsen Preliminary Exam, at 29-30, PageID#771-772). Luster had identified one of the shooters as "Rob" and described "Rob" as a black male, 26-27 years old, 5'7", 150-170 pounds, and could only describe the second shooter as "thin firing a gun." (RE.36-2: Luster/Olsen Statement, PageID#724-725).

Mr. Salter at the time of the August 6, 2003 shooting was approximately 6'4" tall and weighed 250 pounds. (RE.1: Complaint, ¶12, PageID#3).

After showing Luster the single photograph of Mr. Salter, Officer Olsen showed Luster an array of 6 photographs. (R:36-10: Photo Array, PageID#833; RE.36-5: Olsen Preliminary Exam, at 28-29, PageID#770-771; RE.36-7: Luster Dep, at 37-38, 64-67, PageID#786, 792-793). Mr. Salter's photograph was not included in this photo array. (RE.36-5: Olsen Preliminary Exam, at 29, PageID#771).

1

Luster later testified that Officer Olsen told him that the police had already "picked up a guy on that street with a rifle" in connection with the shooting, after which he showed Luster the photograph of Mr. Salter and ask him to confirm if the photograph was the same person who shot at him. (RE.36-7: Luster Dep, at 90-91, PageID#799). Luster also testified that he identified another individual, "E," in the photo array shown to him by Officer Olsen and informed Officer Olsen at that time that "E" also was one of the shooters. (*Id.*, at 37-38, 79-80, PageID#786, 796).

Mr. Salter was arrested and charged with first degree murder, two counts of assault with intent to murder, and felony firearm. (RE.1: Complaint, at 8, PageID#8). Mr. Salter was later convicted and sentenced to life in prison without the possibility of parole. (*Id.*, ¶¶37-38, PageID#8).

In early 2018, after years of denials of his appeals in state and federal courts, the Wayne County Prosecutor's Office Conviction Integrity Unit ("CIU") began investigating Mr. Salter's claims of innocence. (*Id.*, at ¶45, PageID#11). The CIU discovered new evidence that had not been revealed to the prosecutor or to the attorney who represented Mr. Salter at trial. (*Id.*).

One piece of new evidence in the police file was a closeup photograph of Earland "E" Collins that was not turned over to the defense during Mr. Salter's prosecution. (RE.36-13: Earland Photo, PageID#910). The photograph and

accompanying piece of paper indicated "'E' Earland, tall dark-skinned. Pelkey/Linnhurst. 3 houses off corner Moross on Peerless." (*Id.*). An Offender Tracking Information System description of Earland Collins describes him as 6'2", 200 pounds, much closer to Luster's description of the second shooter. (RE.36-14: PageID#912). The closeup photograph was not turned over to the defense because it was never provided to the prosecutor. (RE.36-15: Harris Affidavit, PageID#914; RE.36-16: Lindsay Dep, 27-28, PageID#924).

As a result of the CIU investigation and newly-discovered evidence, Mr. Salter's criminal convictions and sentences were vacated and all criminal charges against him were dismissed. (RE.36-22: Stipulated Order Vacating Convictions, PageID#970-971). Mr. Salter was released from prison on August 15, 2018, after spending nearly 15 years in prison. (RE.1: Complaint, ¶¶48-49, PageID#11-12).

Mr. Salter filed a complaint on March 2, 2020 in the United States District Court for the Eastern District of Michigan, alleging that Officer Olsen violated his constitutional rights by failing to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and conducting an improper identification process. (RE.1: Complaint, PageID#1-19).

Officer Olsen filed a motion for summary judgment seeking dismissal of all of Mr. Salter's claims. (RE.29: Motion for Summary Judgment, PageID#358-392). The

district court issued an written opinion on June 2, 2022, granting in part and denying in part Officer Olsen's motion for summary judgment. (RE.44: Opinion and Order, PageID#1058-1101). The district court denied summary judgment on Mr. Salter's *Brady* claim and his unduly-suggestive-identification claim, but dismissed all other claims. (*Id.*).

Defendant appealed and on March 21, 2025, a two person majority issued an opinion affirming the district court's decision denying summary judgment. Judge Rachel Bloomekatz authored the opinion and Judge John Nalbandian concurred in the opinion. Judge Alice Batchelder dissented.

Officer Olsen has now filed a petition for rehearing and a petition for rehearing *en banc*. For the reasons which follow, this petition should be denied.

# ARGUMENT

## I. THE PANEL MAJORITY CORRECTLY CONCLUDED THAT THE DISTRICT COURT PROPERLY DENIED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF A CONSTITUTIONAL VIOLATION FOR DEFENDANT'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE.

The panel majority correctly affirmed the district court's denial of summary judgment as to plaintiff's claim of a constitutional violation for defendant's failure to disclose exculpatory evidence in violation of *Brady*. The panel majority affirmed the district court's denial of qualified immunity to Officer Olsen based on evidence that he failed to disclose to the defense a closeup photograph of Earland Collins and he failed to disclose the fact that Luster identified Collins as one of the two shooters on August 6, 2003. (RE.44: Opinion and Order, at 30-31, PageID#1087-1088).

In reviewing a claim for qualified immunity, this Court follows a two-step inquiry. First, the Court must consider whether the plaintiff has asserted a violation of a known constitutional right. Second, the Court must consider whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006).

Defendant first argues in his petition that the panel majority wrongly concluded

that *Brady* claims against police officers were clearly established at the time Mr. Salter was prosecuted in 2003. Defendant's Petition, at 3, 6.

It initially bears noting that the panel majority declined to consider this argument that *Brady* claims against police officers were not clearly established because Officer Olsen did not raise this argument in the district court. *Salter*, __ F.4th __ (6th Cir. 2025), *slip opinion*, at 9. In fact, as noted by the panel majority, Officer Olsen conceded below that he had an "obligation to disclose" materially exculpatory evidence to the prosecutor based on *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009). *Slip opinion*, at 9. The panel majority noted that the district court, relying on Officer Olsen's concession, agreed that Mr. Salter satisfied the clearly established prong of his *Brady* claim and was under no obligation to consider Officer Olsen's contrary argument raised for the first time in his motion for reconsideration. *Id.*, at 10. The panel majority was correct in rejecting Officer Olsen's attempt to "reverse course" on appeal. *Id.*

Pursuant to 6 Cir. I.O.P. 40(e), a petition for rehearing *en banc* is an "extraordinary procedure" intended to bring to the attention of the entire court a "precedent-setting error" or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent. Given that the panel majority declined to review whether clearly established law established that *Brady* applied to police officers, *en banc*

6

review of this issue is unwarranted. This panel majority's decision declining to review this issue is neither a precedent-setting error of exceptional public importance nor is it an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent. 6 Cir. I.O.P. 40(e).

Assuming this Court reviews the merits of defendant's *Brady* argument despite his failure to raise this issue below, defendant's arguments should be rejected on the merits. In his petition, defendant recognizes this Court's decision in *Moldowan*, which held that a police officer's obligation under *Brady* was clearly established prior to 1990. Defendant contends, however, that this Court's decision in *Moldowan* is a "questionable" decision and that there is an absence of "a robust consensus of cases" supportive of its holding. Petition, at 3.

In *Moldowan*, the plaintiff filed a §1983 claim alleging a number of violations of his constitutional rights arising out of his 1990-1991 criminal prosecution and conviction, a conviction that was ultimately overturned in 2002. The plaintiff alleged that a police detective, Donald Ingles, failed to disclose exculpatory evidence in violation of his constitutional rights. *Moldowan*, 578 F.3d at 376. Detective Ingles appealed the district court's denial of his motion for summary judgment, arguing on appeal that plaintiff "cannot demonstrate that the Due Process Clause imposes on the police a clearly established obligation to disclose exculpatory information." *Id.*, at

377.

This Court confirmed that the due process guarantees recognized in *Brady* as applicable to a prosecutor also imposed "an analogous or derivative obligation on the police" to disclose potentially exculpatory evidence. *Id.*, at 378-381. After determining that such an obligation exists under *Brady*, this Court in *Moldowan* turned to the question of whether that obligation was "clearly established" as of the date of Detective Ingles' alleged violation of that duty in 1990. This Court noted that decisions from other circuits recognized that this right was clearly established prior to 1990, with some dating back "as far as 1964." *Id.*, at 382. This Court therefore concluded that, "[a]lthough our recognition of this type of a claim is more recent and less specific, the overwhelming number of decisions from other circuits recognizing this type of claim satisfies us that any reasonable police officer would know that suppressing exculpatory evidence was a violation of the accused's constitutional rights." *Id.*

Notably, this Court denied rehearing and rehearing en banc in *Moldowan*, and the Supreme Court denied defendant's petition for writ of certiorari. *City of Warren, Michigan v. Moldowan*, 561 U.S. 1038 (2010).

Given this Court's holding in *Moldowan*, the panel majority properly affirmed the district court's finding that it was clearly established at the time of the events in

question in 2003 that Mr. Salter had a right to not have exculpatory or impeachment evidence withheld from him. *Salter*, at 9-10. As held in *Moldowan*, it was well established long before 2003 that the duty to disclose evidence falls on the state as a whole, and applies to police as well as prosecutors. 578 F.3d at 382. Review of this issue *en banc* is not warranted where the panel majority's decision does not amount to a "precedent-setting error,"nor does the opinion directly conflict with Supreme Court or Sixth Circuit precedent. 6 Cir. I.O.P. 40(e).

Defendant's contention that there is an absence of cases supportive of this Court's holding in *Moldowan* also ignores the many decisions of the Supreme Court and this Circuit holding that the *Brady* disclosure obligation extends to police officers. See *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999) (holding that the *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor," citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)); *Gillispie v. Miami Twp., Ohio*, 18 F.4th 909, 918 n.2 (6th Cir. 2021) (noting that it has long been clearly established law that prosecutorial withholding of exculpatory evidence violates a criminal defendant's Fourteenth Amendment right to due process, with the obligation to disclose extending to police officers); *Jackson v. City of Cleveland*, 925 F.3d 793, 823-824 (6th Cir. 2019); *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 468 (6th Cir. 2015). Contrary to defendant's argument, this Court's decision in *Moldowan*

is supported by "robust" authority.

Defendant next argues that the panel majority's decision prevents meaningful review of whether the withheld evidence was material and exculpatory, and whether the exculpatory value of that evidence would have been readily apparent to a reasonable officer. Petition, at 1, 3-4, 6-11. Defendant asserts that the panel majority, relying on this Court's decision in *Clark v Louisville-Jefferson Cnt. Metro. Gov't*, 130 F.4th 571 (6th Cir. 2025), incorrectly declined to review these mixed fact/law questions in the context of *Brady* claims by concluding that such questions are beyond this Court's jurisdiction on an interlocutory qualified immunity appeal. *Id.* Defendant argues that *Clark* carves out a "special rule" in *Brady* claims that mixed fact/law questions are not subject to review. *Id.* Defendant's arguments are without merit.

It is well established that a defendant who is denied qualified immunity may file an interlocutory appeal with this Court "only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). A district court's determination that there exists a triable issue of fact cannot be appealed on an interlocutory basis, even when that finding arises in the context of an assertion of qualified immunity. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). To the

extent that an appellant in an interlocutory appeal argues issues of fact and law on appeal, this Court will only entertain pure issues of law. *Gregory*, 444 F.3d at 742-743.

It also is well established that "to bring an interlocutory appeal of a qualified immunity ruling, the defendant must be willing to concede the plaintiff's version of the facts for purposes of the appeal." *Gillispie*, 18 F.4d at 917. As held in *Gillispie*, this Court has consistently enforced the jurisdictional bar established in *Johnson* in cases where the defendant's qualified immunity appeal is based solely upon a disagreement with the plaintiff's facts. *Id.*, at 916. If disputed factual issues are "crucial" to a defendant's interlocutory qualified immunity appeal, this Court is obliged to dismiss the appeal for lack of jurisdiction. *Id.* Even in circumstances where a defendant asserts arguments about whether the law was clearly established, if he "fails to concede the most favorable view of the facts," this Court cannot consider those arguments. *Id.*, at 917.

In *Gillispie*, the defendant refused to accept the plaintiff's version of the facts and disagreed with the district court's determinations that multiple genuine disputes of material fact existed. *Id.*, at 918. This Court held in *Gillispie* that the defendant's failure to accept plaintiff's version of the facts was "fatal" to his appeal. *Id.*

In *Gregory*, a case concerning a series of rapes, the defendants similarly failed

to concede the plaintiff's version of the facts. The district court denied qualified immunity on plaintiff's allegation that defendant Officer John Tarter withheld exculpatory evidence – the existence of a fourth rape, which suggested someone else other than plaintiff was the serial rapist – in violation of *Brady*. 444 F.3d at 743-744. The district court held that there existed a question of fact with respect to whether the failure to disclose the fourth rape was material. The *Gregory* Court held that it lacked jurisdiction to entertain Tarter's appeal from the district court's denial of qualified immunity for plaintiff's claim of *Brady* violations, given the disputed questions of material fact. *Id*.

Notably, the *Gregory* Court applied this same analysis to a different defendant, medical examiner Dawn Katz, who argued for qualified immunity against plaintiff's fabrication of evidence claim. 444 F.3d at 744-745. The Court in *Gregory* held that it could not entertain Katz's arguments for qualified immunity as to this claim because the record demonstrated that the parties "dispute what the evidence shows." The Court held that, by arguing that the evidence "establishes at most a negligent performance of her duties, Katz is arguing disputed issues of fact to this Court. We cannot entertain Katz's arguments going to disputed issues of material fact on this interlocutory appeal." *Id.*, citing *Johnson*, 515 U.S. at 313.

This Court in *Gregory* denied rehearing and denied rehearing en banc, and the

Supreme Court denied defendant's petition for writ of certiorari. *Tarter v. Gregory*, 549 U.S. 1114 (2007).

Defendant recognizes that this Court's holding in *Clark* relied on the holding in *Gregory*. Petition, at 6. But contrary to defendant's argument, *Clark* did not "carve out" a special rule in the context of *Brady* claims that mixed fact/law questions are not subject to review, nor did the *Clark* Court hold that the legal question of whether a constitutional violation occurred cannot be reviewed because this Court lacks jurisdiction over "materiality." *Clark* instead merely followed long-standing precedent established in *Gregory* and *Johnson*, holding that this Court lacks jurisdiction to entertain an appeal from a district court's denial of qualified immunity where the arguments raised by the defendant take issue with the district court's determination that there exists a genuine issue of material fact for trial. The decision in this case does not contain a "precedent-setting error" or directly conflict with Supreme Court or Sixth Circuit precedent, sufficient to warrant *en banc* review. 6 Cir. I.O.P. 40(e).

Defendant further argues that the panel majority improperly adopted a "negligence" standard for determining whether a police officer violated the plaintiff's constitutional rights. Petition, at 3-5, 11-14. Defendant contends that the panel majority, relying "entirely" upon the decision in *Clark*, improperly imposed liability

in *Brady*-derived due process claims without the necessary showing of "bad faith." *Id.* Defendant's argument, however, is incorrect.

The panel majority based its decision on the holdings in *Clark* and *Moldowan*, which plainly rejected a negligence standard. In fact, this Court in *Moldowan* acknowledged that it was bound to reject a negligence standard because the Supreme Court had previously held that mere negligence cannot support a §1983 due process claim. 578 F.3d at 382-383.

This Court in *Moldowan* acknowledged that a number of Courts, including the Supreme Court, require a showing of "bad faith" to prevail on a claim that the police deprived a defendant of due process by concealing or withholding evidence that is only "potentially useful." 578 F.3d at 383. But the *Moldowan* Court specifically held that a showing of bad faith is *not* required where the police fail to disclose evidence that they know or should know is material and exculpatory for the simple reason that, where the police have in their possession evidence that they know or should know might play a significant role in the suspect's defense, the destruction or concealment of that evidence can *never* be done in good faith:

> The reason no *further* showing of animus or bad faith is required is that, where the police have in their possession evidence that they know or should know "might be expected to play a significant role in the suspect's defense," *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528, the destruction or concealment of that evidence can never be done "in good

14

faith and in accord with their normal practice," *Killian v. United States*, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). Consequently, requiring a criminal defendant or § 1983 plaintiff to show a "conscious" or "calculated" effort to suppress such evidence would be superfluous.

578 F.3d at 388-389 (emphasis in original, footnotes excluded).

In the concurrence filed in *Moldowan*, Judge Kethledge, although advocating for a "bad faith" standard for officers, admitted that the standard adopted by the majority "will probably operate as the functional equivalent" of the "bad faith" standard. 578 F.3d at 406-407.

Here, plaintiff did not argue that a negligence standard applied to Officer Olsen, nor did the panel majority apply a negligence standard. Rather, plaintiff demonstrated that the exculpatory value of the undisclosed evidence was apparent, such that no *additional* showing of bad faith was required. The panel majority's decision is consistent with *Moldowan*, and therefore does not constitute a "precedent-setting error" or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent. Pursuant to 6 Cir. I.O.P. 40(e), the "extraordinary procedure" of a petition for rehearing *en banc* is unwarranted, particularly given the recognition that this is a "functionally equivalent" standard.

In fact, the standard adopted in *Moldowan* is consistent with the law in other circuits, holding that officers can be liable for suppressing evidence despite its

apparent exculpatory value. See *Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009) (holding that §1983 plaintiff is not required to show that officers acted in bad faith in withholding material, exculpatory evidence from prosecutors, but rather must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence); *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1232-1233 (10th Cir. 2024) (holding that, in a §1983 context, an investigator must not knowingly or recklessly cause a *Brady* violation).

## II. THE PANEL MAJORITY ALSO CORRECTLY CONCLUDED THAT THE DISTRICT COURT PROPERLY DENIED SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM OF A CONSTITUTIONAL VIOLATION FOR DEFENDANT'S UNNECESSARILY SUGGESTIVE SINGLE-PHOTO IDENTIFICATION PROCEDURE.

Finally, defendant argues that qualified immunity applies to Mr. Salter's claim based on a purportedly unduly suggestive photo line-up because no clearly established law would have told reasonable officers that a single-photo identification procedure violated the law. Petition, at 15-17. This Court should deny the petition and affirm the panel majority.

It is well established that a criminal suspect has a constitutional right to be free from identification procedures "so unnecessarily suggestive and conducive to

irreparable mistaken identification" that the identification's use violates due process of law. *Gregory*, 444 F.3d at 746, citing *Stovall v. Denno*, 388 U.S. 293, 302 (1967), abrogated on other grounds by *United States v. Johnson*, 457 U.S. 537 (1982); *Perry v. New Hampshire*, 565 U.S. 228, 238-239 (2012) (holding that a suggestive identification procedure violates due process when law enforcement officers use an identification procedure that is both suggestive and unnecessary.).

As recognized by defendant, this Court in *Gregory* specifically rejected a defendant's argument that there was no well established constitutional right in 1992 to be free of impermissibly suggestive identification procedures. *Gregory*, 444 F.3d at 745-746; see also *Gillispie*, 18 F.4th at 918, n.2 (noting that, as early as 1967, it was clearly established that a person the police suspected of committing a crime had a constitutional right to be free from identification procedures "so unnecessarily suggestive and conducive to irreparable mistaken identification" that the identification's use violates due process of law.).

Additionally, courts have found that single-photo identifications are unnecessarily suggestive. In *Stovall*, 388 U.S. at 302, the Supreme Court held that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." See also *Simmons v. U.S.*, 390 U.S. 377, 383-384 (1968) (holding that the danger that a witness may make an

incorrect identification is increased if the police show the witness "only the picture of a single individual who generally resembles the person he saw.").

The panel majority therefore properly held that a reasonable officer would be on notice that a single-photo identification is "problematic" and violates clearly established law. *En banc* review is therefore unwarranted. 6 Cir. I.O.P. 40(e).

## CONCLUSION

Based on the foregoing, this Court should deny defendant's petition for rehearing and rehearing *en banc*.

**MARK GRANZOTTO, P.C.**

**/s/ Mark Granzotto**
**MARK GRANZOTTO  (P31492)**
Attorney for Plaintiff-Appellee
2684 Eleven Mile Road, Suite 100
Berkley, Michigan 48072
(248) 546-4649

Dated: April 29, 2025.

## CERTIFICATION PURSUANT TO FRAP 32(a)(7)(C)

Mark Granzotto, attorney for plaintiff-appellee, hereby certifies pursuant to

Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure that this brief was typed

using the Corel Word Perfect word processing program. That program has a function

which can calculate the total number of words contained in a document. According

to that program function, there are 3,880 words in this brief.

      /s/ Mark Granzotto
      Counsel for Plaintiff-Appellee

## **DESIGNATION OF RECORD ON APPEAL**

Pursuant to Sixth Circuit Rule 29(c), plaintiff-appellee designates the following additional filings in the district court for inclusion in the Record on Appeal:

| **Description Of Entry** | **Date Filed** | **RE No.** | **Range** |
|---|---|---|---|
| Response to Motion for Summary judgment (w/Exhibits) | 4/17/20 | 36 | 667-1007 |
| Reply Brief | 4/27/20 | 37 | 1008-1017 |
| Tr. Dated December 16, 2020 | 9/16/22 | 54 | 1465-1488 |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2025, I electronically filed the foregoing paper with the Clerk of the United States Sixth Circuit Court of Appeals, using the ECF system.

_/s/  Mark Granzotto_____